Index No. 24-cv-07600 (JGK)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

C.S., by her parent, K.S.; M.T., by her parent, N.T.; H.B.,
by his parent, V.B.; C.I.R., by her parent, C.R.;

on behalf of themselves and all other similarly situated,

Plaintiffs,

-against-

NEW YORK CITY PUBLIC SCHOOLS, and MELISSA
AVILES-RAMOS, as Chancellor of New York City
Public Schools,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

*MURIEL GOODE-TRUFANT*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Kendra Elise Riddleberger*
*Tel:  (212) 356-4377*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTS ............................................................................................................................... 3

LEGAL STANDARDS ...................................................................................................... 5

          A.   Dismissal under Rule 12(b)(1)............................................................. 5

          B.   IDEA Statutory Framework................................................................. 6

          C.   Dismissal under Rule 12(b)(6)........................................................... 10

POINT I

          THE COURT LACKS SUBJECT MATTER
          JURISDICTION OVER THIS ACTION BECAUSE
          PLAINTIFFS FAILED TO EXHAUST THEIR
          ADMINISTRATIVE REMEDIES ........................................................ 11

POINT II

          PLAINTIFFS' SECTION 504 AND ADA CLAIMS
          SHOULD BE DISMISSED AS DEFENDANTS
          HAVE NOT ACTED WITH BAD FAITH OR
          GROSS MISJUDGMENT ...................................................................... 17

POINT III

          PLAINTIFFS' CLAIMS PURSUANT TO § 1983
          SHOULD BE DISMISSED AS THE
          PROCEDURAL SAFEGUARD OF THE IDEA
          WERE AVAILABLE TO THEM.............................................................. 18

POINT IV

          PLAINTIFFS' CLAIMS UNDER THE NEW
          YORK CITY HUMAN RIGHTS LAW SHOULD
          BE DISMISSED FOR FAILURE TO STATE A
          CLAIM.................................................................................................. 19

**Page**

POINT V

    PLAINTIFFS' CLAIM PURSUANT TO THE NEW
    YORK STATE CONSTITUTION SHOULD BE
    DISMISSED FOR FAILURE TO STATE A CLAIM
    ................................................................................................................ 19

CONCLUSION ............................................................................................................ 20

## TABLE OF AUTHORITIES

**Cases**                                                                                              **Pages**

*A.A. v. Board of Educ.*, 255 F. Supp. 2d 119 (E.D.N.Y. 2003),
  aff'd sub nom., *A.A. v. Philips*,
  386 F.3d 455 (2d Cir. 2004)...................................................................................9

*A.K. v. Westhampton Beach Sch. Dist.*,
  2019 U.S. Dist. LEXIS 167085 (E.D.N.Y. Sept. 27, 2019)..................................18

*Alroy v. N.Y.C. Law Dep't*,
  69 F. Supp. 3d 393 (S.D.N.Y. 2014)........................................................................6

*APWU v. Potter*,
  343 F.3d 619 (2d Cir. 2003)......................................................................................6

*Arar v. Ashcroft*,
  585 F.3d 559 (2d Cir. 2009)....................................................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................10

*B.M. v. Plesantville Union Free Sch. Dist.*,
  2021 U.S. Dist. LEXIS 183330 (S.D.N.Y. Sept. 24, 2021)..................................14

*T.J. ex rel. B.W. v. Bd. of Educ.*,
  2019 U.S. Dist. LEXIS 171583 (S.D.N.Y. Sept. 30, 2019).............................17, 18

*B.Z. v. Hewlett Woodmere Union Free Sch. Dist.*,
  2025 U.S. Dist. LEXIS 14032 (E.D.N.Y. Jan. 27, 2025) ......................................13

*Bd. of Educ. v. Rowley*,
  458 U.S. 176 (1982)..................................................................................................6

*Bell Atl. Corp. v. Twombley*,
  550 U.S. 544 (2007)................................................................................................10

*Ben-Levy v. Bloomberg*,
  518 Fed. Appx. 17 (2d Cir. 2013)...........................................................................19

*Blockbuster, Inc. v. Galeno*,
  472 F.3d 53 (2d Cir. 2006).......................................................................................6

*Cave v. E. Meadow Union Free Sch. Dist.*,
  514 F.3d 240 (2d Cir. 2008)..................................................................8, 11, 12, 13

*CN v. Katonah Lewisboro Sch. Dist.*,
  2020 U.S. Dist. LEXIS 239811 (S.D.N.Y. Dec. 21, 2020) .............................14, 15

**Cases**                                                                                                                                                       **Pages**

*Doe v Arizona Dept. of Educ.*,
    111 F.3d. 678 (9th Cir. 1997) ......................................................................................................16

*Forest Grove Sch. Dist. v. T.A.*,
    557 U.S. 230 (2009)........................................................................................................................6

*FW/PBS, Inc. v. City of Dallas*,
    493 U.S. 215 (1990)........................................................................................................................6

*Gonzalez v. City of New York*,
    377 F. Supp 3d 273 (S.D.N.Y. 2019)......................................................................................19

*Grim v. Rhinebeck Cent. Sch. Dist.*,
    2002 U.S. Dist. LEXIS 26915 (S.D.N.Y. Mar. 29, 2002),
    *rev'd on other grounds*, 2002 U.S. App. LEXIS 27934 (2d Cir. Oct. 8, 2003)......................8

*Hardison v. Bd. of Educ. of the Oneonta City Sch. Dist.*,
    773 F.3d 372 (2d Cir. 2014)...........................................................................................................6

*Heldman v. Sobol*,
    962 F.2d 148 (2d Cir. 1992)........................................................................................................12

*Henrietta D. v. Bloomberg*,
    331 F.3d 261 (2d. Cir. 2003).......................................................................................................17

*Hoeft v. Tucson Unified Sch. Dist.,*
    967 F.2d 1298 (9th Cir. 1992) ....................................................................................................15

*Honig v. Doe*,
    484 U.S. 305 (1988).............................................................................................................7, 13

*Hope v. Cortines*,
    872 F. Supp. 14 (E.D.N.Y. 1995) .............................................................................................12

*J.M. v. N.Y. City Dep't of Educ.*,
    2015 U.S. Dist. LEXIS 110366 ..................................................................................................20

*J.T. v. de Blasio*,
    500 F. Supp. 3d 137 (S.D.N.Y. 2020)................................................................................11, 16

*K.M. v. Hyde Park Cent. Sch. Dist.*,
    381 F. Supp. 2d 343 (S.D.N.Y. 2005)......................................................................................20

*Killoran v. Westhampton Beach Sch. Dist.*,
    2023 U.S. App. LEXIS 17767 (2d Cir. July 13, 2023)...........................................................17

**Cases**                                                                                    **Pages**

*L.O. v. N.Y. City Dep't of Educ.,*
    822 F.3d 95 (2d Cir. 2016).......................................................................13

*Lamoine Sch. Comm. V. Ms. Z ex rel. N.S.,*
    353 F. Supp. 2d. 18 (D. Me. 2005) .........................................................15

*LaSheik Lee v. Bd. of Educ. For Prince George's County Cnty.,*
    2024 U.S. Dist. LEXIS 16589 (D. Md. Jan. 31, 2024) ...........................15

*Loeffler v. Staten Island Univ. Hosp.,*
    582 F.3d 268 (2d Cir. 2009).....................................................................19

*Lunney v. United States,*
    319 F.3d 550 (2d Cir. 2003).......................................................................6

*Makarova v. United States,*
    201 F.3d 110 (2d Cir. 2000).......................................................................5

*Malik v. Meissner,*
    82 F.3d 560 (2d Cir. 1996).........................................................................6

*Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.,*
    297 F.3d 195 (2d Cir. 2002)..............................................................7, 12, 13

*J.S. ex rel. N.S. v. Attica Cent. Schs.,*
    386 F.3d 107 (2d Cir. 2004)...........................................................5, 11, 12, 13

*Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.,*
    288 F.3d 478 (2d Cir. 2002)..........................................................11, 12, 13

*Port Dock & Stone Corp. v. Oldcastle Ne., Inc.,*
    507 F.3d 117 (2d Cir. 2007).....................................................................10

*Reyes v. Bedford Cent. Sch. Dist.,*
    2017 U.S. Dist. LEXIS 159568 (S.D.N.Y. Sept. 27, 2017)..................13, 16

*S.W. by J.W. v. Warren,*
    528 F. Supp. 2d 282 (S.D.N.Y. 2007).....................................................13

*Shipping Fin. Servs. v. Drakos,*
    140 F.3d 129 (2d Cir. 1998)........................................................................6

*Streck v. Bd. of Educ. of E. Greenbush Sch. Dist.,*
    280 F. App'x 66 (2d Cir. 2008) ...............................................................18

**Cases**                                                           **Pages**

*In re: Student with a Disability*
   121 LRP 27673 (July 16, 2021) ................................................................15

*In re: Student with a Disability*
   124 LRP 42708 (Jan. 11, 2023) ................................................................14

*In re: Student with a Disability*
   124 LRP 25144 (Sep. 30, 2021) ...............................................................14

*Thompson v. Cnty. of Franklin,*
   15 F.3d 245 (2d Cir. 1994) ........................................................................6

*Toth v. N.Y.C. Dep't of Educ.,*
   718 F. Supp 3d 224 (E.D.N.Y. 2024) .......................................................19

*Ventura de Paulino v. New York City Dep't of Educ.,*
   959 F.3d 519 (2d Cir. 2020) ......................................................................8

*Yamashita v. Scholastic Inc.,*
   936 F.3d 98 (2d Cir. 2019) ......................................................................10

**Statutes**

34 CFR § 300.28(a) .........................................................................................8

34 CFR § 300.324(a)(4)(i) ..............................................................................7

34 CFR § 300.510(a) .......................................................................................8

34 CFR § 300.510(b)(1) ..................................................................................9

34 CFR § 300.515(a) .......................................................................................9

34 CFR § 300.515(b)(1) ..................................................................................9

34 CFR § 300.515(c) .......................................................................................9

8 NYCRR § 200.4(e)(4) ..................................................................................7

8 NYCRR § 200.5(j)(2)(i) ...............................................................................8

8 NYCRR § 200.5(j)(2)(v) ..............................................................................9

8 NYCRR § 200.5(j)(5) ...................................................................................9

8 NYCRR § 200.5(j)(5)(i) ...............................................................................9

| **Cases** | **Pages** |
|---|---|

8 NYCRR § 200.5(j)(5)(v)............................................................9

8 NYCRR § 200.5(k)(2)..............................................................9

8 NYCRR § 279.2(b)..................................................................9

8 NYCRR § 279.4(a)..................................................................9

8 NYCRR § 279.4(f)...................................................................9

8 NYCRR § 279.5(a)..................................................................9

8 NYCRR § 279.5(b)..................................................................9

20 U.S.C. § 1400(d)(1)(B), (C)...................................................9

20 U.S.C. § 1401(3); (19)..........................................................6

20 U.S.C. § 1401(9)..................................................................6

20 U.S.C. § 1414(d)...............................................................6, 7

20 U.S.C. § 1415(i)(1)(A).........................................................11

20 U.S.C. § 1415(i)(2)(A)...........................................................8

20 U.S.C. § 1415(b)(6)(A)...........................................................8

20 U.S.C. §§ 1415(b)(6), (c), (f)-(i)...........................................7-8

20 U.S.C. § 1415(f)(1)(A)...........................................................8

20 U.S.C. § 1415(f)(1)(B)(i)........................................................8

20 U.S.C. § 1415(f)(1)(B)(ii).......................................................9

20 U.S.C. § 1415(g)(1)...............................................................8

20 U.S.C. § 1415(l).................................................................11

42 U.S.C. § 1983...................................................2, 3, 4, 11, 18

Fed. R. Civ. P. 12(b)(1).............................................................2

Fed. R. Civ. P. 12(b)(1).............................................................5

Fed. R. Civ. P. 12(b)(6).............................................................2

| **Cases** | **Pages** |
|---|---|
| Fed. R. Civ. P. 12(b)(6) | 10 |
| N.Y. Educ. L. § 4402 | 6 |
| N.Y. Educ. L. § 4402(1)(b)(2)-(3) | 7 |
| N.Y. Educ. Law § 3602-c(2)(b)(1) | 8 |
| N.Y. Educ. Law § 4404 | 8 |
| N.Y. Educ. Law § 4404(1)(a) | 8 |
| N.Y. Educ. Law § 4404(2) | 8 |
| N.Y. Educ. Law § 4404(3) | 8 |
| Rehabilitation Act § 504 | 2, 3, 17, 18 |

## PRELIMINARY STATEMENT

Plaintiffs bring this purported class action claiming that New York City Public Schools ("NYCPS") and Melissa Aviles-Ramos, as Chancellor of New York City Public Schools ("Defendants"), have denied a free and appropriate public education ("FAPE") to students whose disabilities cause them to avoid attending school, which they refer to as "School Avoidance[1]." Defendants are required to provide a FAPE to all New York City students with disabilities and should it fail to do so, a parent may bring a suit alleging that there has been denial of a FAPE. Prior to commencing an action in court, parents are required to exhaust their available administrative remedies.

Plaintiffs are all school-aged children who attend or attended a New York City Public school, have Individualized Education Programs ("IEP") and struggle with School Avoidance. Plaintiffs allege that Defendants do not have any policies or procedures to ensure that students struggling with School Avoidance receive a FAPE. Plaintiffs seek to have Defendants develop a program designed to identify students struggling with School Avoidance and address School Avoidance with the goal of returning the students to school. Plaintiffs in this matter did not seek

---

[1] School Avoidance is distinct from chronic absenteeism. School Avoidance refers to students "whose disabilities cause them to avoid approaching, entering, and/or remaining in school." Amended Complaint, (Dkt. No. 23)  at ¶ 3.  Chronic absenteeism refers to a student whose attendance rate is less than 90%.  *Id*. at ¶ 53; *see also* New York City Department of Education Regulation of the Chancellor A-210 III(D).  As Plaintiffs note in the Amended Complaint, "not all students with School Avoidance are 'chronically absent'" and therefore it is important not to conflate these terms.  *Id*. at ¶ 83.

relief through the available administrative process and instead allege that they should be excused from doing so because it would be futile, as the process is allegedly inadequate to address the issue of School Avoidance.

Defendants respectfully submit this memorandum of law in support of their motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). As the law makes abundantly clear, Plaintiffs are required to exhaust their administrative remedies before proceeding to court, and their failure to do so deprives this Court of subject matter jurisdiction. Although exhaustion may be excused in very limited circumstances, Plaintiffs may not seek to avoid the exhaustion requirement simply by alleging, as they do, and without attempting to engage in the administrative process, that the available administrative procedures are somehow inadequate to adjudicate and remedy their claims. This is especially apparent here, in light of the fact that the administrative process has been used to successfully address School Avoidance for other students. That Plaintiffs claims are brought as a putative class action does not alter the conclusion that Plaintiffs must exhaust the available administrative remedies before seeking court intervention.

Additionally, Plaintiffs have brought claims under Section 504 of the Rehabilitation Act ("Section 504"), the Americans with Disabilities Act ("ADA"), the New York City Human Rights Law ("NYCHRL"), the New York State Constitution ("NYS Const."), and claims pursuant to 42 U.S.C. § 1983. As Plaintiffs' claims all amount to an alleged denial of a FAPE, the exhaustion requirement also applies to their claims under Section 504, the ADA, the NYS Const., and their claims pursuant to § 1983. Further, Plaintiffs have failed to properly plead these additional claims. Accordingly, Defendants' motion should be granted and the Amended Complaint should be dismissed in its entirety.

**FACTS**

The facts on which this motion is based are set forth in the Amended Complaint (Dkt. no. 23) and are accepted as true for purposes of this motion. A brief summary is set forth below.

Plaintiffs in this action are four students (and their parents) with IEPs, each of whom struggle with School Avoidance, allegedly due to their disabilities. *Id*. at ¶¶ 2-3. School Avoidance refers to a range of behaviors of children who, sometimes due to a disability, have difficulty approaching, entering, and/or remaining in school. *Id*. at ¶ 3. School Avoidance is distinct from chronic absenteeism or truancy as School Avoidance can be connected to a particular reason for missing school rather than a conscious choice not to attend. In this case, Plaintiffs allege that the students are engaged in school avoidance due to their disabilities. *Id*.

Plaintiffs allege that Defendants have violated their rights under the IDEA, Section 504, the ADA, NYCHRL, the NYS Const., and pursuant to 42 U.S.C. § 1983. *Id*. at ¶ 1. The gravamen of the Amended Complaint is that Defendants have denied Plaintiffs a FAPE because they "ha[ve] failed to put in a place any systemic policies or procedures to ensure that students suffering from School Avoidance receive a FAPE." *Id*. at ¶ 9.

While every student Plaintiff in this action allegedly struggles with School Avoidance, each of their situations is fact-sensitive and unique. Plaintiff C.S. has struggled with School Avoidance since September 2019. Currently C.S. is 16 years old, has an educational classification of Other Health Impairment and has received a diagnosis of agoraphobia, Major Depressive Disorder, and Social Anxiety Disorder. *Id*. at ¶ 97. C.S. has an IEP and is currently enrolled in A School Without Walls which offers students hybrid in-person and remote instruction. *Id*. C.S.'s IEP notes that she "has struggled to maintain attendance with consistency due to feelings of social anxiety and fear of social judgment" and that she is currently only attending the remote days of her school after she began suffering from panic attacks and sensory overload when attending in

person days. *Id*. at ¶¶ 97; 103. C.S. has never filed a due process complaint to challenge her IEP and the services that the IEP prescribes. *Id*. at ¶ 107.

Plaintiff M.T. has struggled with School Avoidance since November 2023. *Id*. at ¶ 25. M.T. is 15 years old, has an educational classification of Autism Spectrum Disorder, and has been diagnosed with Autism Spectrum disorder and Intermittent Explosive Disorder. Additionally, M.T. has a habit of eloping. *Id*. at ¶ 108. M.T. has had many emergency room visits and two psychiatric hospitalizations within the last two years. *Id*. M.T. was frequently teased at school beginning in the fall of 2023. *Id*. at ¶ 112. She then refused to take the bus to school or get out of the car when her parents would drive her to school. *Id*. at ¶¶ 113-114; 116. In November 2023, M.T.'s parents requested Home Instruction for M.T., which she is currently still receiving. *Id*. at ¶¶ 108; 117. M.T. has never filed a due process complaint to challenge her IEP and the services that the IEP prescribes. *Id*. at ¶ 121.

Plaintiff H.B. has struggled with School Avoidance since September 2018. *Id*. at ¶ 26. H.B. is 16 years old and has been diagnosed with Autism Spectrum Disorder, Depression, Attention Deficit/Hyperactivity Disorder, and suffers from agoraphobia. *Id*. at ¶ 122. Further, H.B. has had three inpatient hospitalizations for depression. *Id*. H.B. is currently enrolled at Virtual Innovators Academy, which is a fully remote program. *Id*. H.B's School Avoidance began when staff at one of his former schools arranged for H.B. to go to the psychiatric emergency department after he had an emotional breakdown in 2018. *Id*. at ¶ 124. H.B. currently only attends the minimal number of classes at Virtual Innovators Academy. *Id*. at ¶¶122-134. H.B. has never filed a due process complaint to challenge his IEP and the services that the IEP prescribes. *Id*. at ¶ 138.

Plaintiff C.I.R. has struggled with School Avoidance since October 2022. *Id*. at ¶ 27. C.I.R. is 10 years old and has been diagnosed with Autism Spectrum Disorder and Social Anxiety Disorder. *Id*. at ¶ 139. Currently C.I.R. is being homeschooled. *Id*. C.I.R. stated that she did not want to attend school because she was afraid of her teachers and had severe anxiety around attending and staying in school. *Id*. at ¶ 140. C.I.R. has an Individualized Education Service Program ("IESP"), which is the effective equivalent of an IEP for students who are homeschooled or in a Non-Public School. *Id*. at ¶ 147; *see also* https://www.schools.nyc.gov/learning/special-education/iesp-equitable-services-assistance (last accessed February 14, 2025). C.I.R. has never filed a due process complaint to challenge her IESP and the services that the IESP prescribes.

The IDEA requires plaintiffs seeking relief to have exhausted their administrative remedies before proceeding to court. Plaintiffs here did not do so, instead alleging that they are exempt from the exhaustion requirement because Defendants have failed on a "systemic level" and that it would be futile for them to seek relief through the administrative hearing process as it is designed for individualized relief and "does not have the power to correct Defendants' systemic failures." *Id*. at ¶¶ 164-169. As discussed more fully below, Plaintiffs' arguments are unconvincing and their failure to exhaust their administrative remedies is fatal to their claims.

## LEGAL STANDARDS

### A.    Dismissal under Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In deciding a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a court "must accept as true all material factual allegations in the complaint." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). As the party invoking the court's jurisdiction, the plaintiff bears the burden of "showing by a

preponderance of the evidence that subject matter jurisdiction exists." *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003); *see also Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996); *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006); *Alroy v. N.Y.C. Law Dep't*, 69 F. Supp. 3d 393, 398 (S.D.N.Y. 2014). "'Jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (quoting *Shipping Fin. Servs. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)); *see also Thompson v. Cnty. of Franklin*, 15 F.3d 245, 248 (2d Cir. 1994) (subject matter jurisdiction "'cannot be inferred argumentatively from averments in the pleadings . . . but rather must affirmatively appear in the record'") (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230-31 (1990)).

**B.     IDEA Statutory Framework**

Congress enacted the IDEA to promote the education of students with disabilities. *See Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 238-39 (2009). Pursuant to the IDEA, the school district of residence, also known as the local educational agency ("LEA") is required to evaluate and offer each child with a disability within its district a FAPE. 20 U.S.C. § 1401(3); (19). FAPE is defined as special education and related services, provided at public expense, which meet the standards of the state educational agency and are provided in conformity with an IEP. 20 U.S.C. §§ 1401(9), 1414(d); *Bd. of Educ. v. Rowley*, 458 U.S. 176, 207 (1982). In New York State, the formulation of IEPs is delegated to a local Committee on Special Educ1ation ("CSE"), consisting of school board representatives, educators, clinicians, and parents. N.Y. Educ. L. § 4402; *see generally Hardison v. Bd. of Educ. of the Oneonta City Sch. Dist.*, 773 F.3d 372, 376-77 (2d Cir. 2014). The CSE evaluates the student's educational status and areas for improvement. N.Y. Educ. L. § 4402(1)(b)(2)-(3). The CSE creates an IEP that outlines the goals and objectives for the

student for the upcoming school year and the recommended special education and related services to attain those goals and objectives and make educational progress.  20 U.S.C. § 1414(d).  The IEP must be developed annually by "[a] school official qualified in special education, the child's teacher, the child's parents, and, where appropriate, the child."  *Walczak*, 142 F.3d at 122.  As the "result of collaborations between parents, educators, and representatives of the school district," the IEP is the "'centerpiece' of the IDEA's education delivery system.'"  *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 197 (2d Cir. 2002) (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)).

The IDEA "establishes various procedural safeguards that guarantee parents both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate."  *Honig*, 484 U.S. at 311–12.  Although the IEP is required to be provided annually, 20 U.S.C. § 1414(d), a parent may request that the CSE convene to review a child's IEP and, if necessary, create a new IEP, at any time.  *See* 8 NYCRR § 200.4(e)(4).  Additionally, regulations promulgated under the IDEA provide that the parent and the LEA may agree to make changes to a child's IEP after the annual IEP Team meeting by developing a written document to amend or modify the child's current IEP.  *See* 34 CFR § 300.324(a)(4)(i).

Either the parent of a student with a disability or the LEA may challenge the identification, evaluation, or educational placement of the student, or the provision of FAPE to the student, by filing a due process complaint, which commences an impartial due process hearing.  20 U.S.C. §§

1415(b)(6), (c), (f)-(i).  *See Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008) (quoting 20 U.S.C. § 1415(b)(6)(A)). [2]

In New York, these hearings are heard in a two-tier administrative tribunal system. *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 526 (2d Cir. 2020).  The first tier is an impartial due process hearing before an impartial hearing officer ("IHO") that is assigned to the hearing by the LEA.  *See* 20 U.S.C. § 1415(f)(1)(A); 34 CFR § 300.28(a); N.Y. Educ. Law § 4404(1)(a); *see also Grim v. Rhinebeck Cent. Sch. Dist.*, 2002 U.S. Dist. LEXIS 26915, at *101-02 (S.D.N.Y. Mar. 29, 2002), *rev'd on other grounds*, 2002 U.S. App. LEXIS 27934 (2d Cir. Oct. 8, 2003).  A party dissatisfied with an IHO's decision has a right to appeal to a second tier of administrative tribunals, the Office of State Review in the New York State Education Department, where a State Review Officer ("SRO") decides the appeal. N.Y. Educ. Law § 4404(2).  A party aggrieved by the SRO's decision may seek review in state or federal court. 20 U.S.C. § 1415(f)(1)(A), (g)(1), (i)(2)(A); N.Y. Educ. Law § 4404(3).  The timeframes for each step in the process – from filing the administrative due process complaint through issuance of the SRO's decision – are set forth in the IDEA, and the federal and state regulations. [3]

---

[2] IESPs are governed by New York State law, but the process for challenging an IESP is the same as challenging an IEP.  *See* N.Y. Educ. Law §§ 3602-c(2)(b)(1); 4404.

[3]  The IDEA, as well as state and federal regulations, provide that, within 15 days of the receipt of the due process complaint notice, the school district shall convene a resolution meeting where the parents discuss their complaint and the school district has an opportunity to resolve that complaint with the parents and the relevant members of the CSE. 20 U.S.C. § 1415(f)(1)(B)(i); 34 CFR § 300.510(a); 8 NYCRR § 200.5(j)(2)(i).  If the matter is not resolved within 30 days from the receipt

These tiers – local, state and federal – represent a purposeful result of the statutory "partnership" established between "federal, state and local governments and agencies ... to ensure that the goals of the IDEA are met." *A.A. v. Board of Educ.*, 255 F. Supp. 2d 119, 124 (E.D.N.Y. 2003) (citing 20 U.S.C. § 1400(d)(1)(B), (C), *aff'd sub nom.*, *A.A. v. Philips*, 386 F.3d 455 (2d Cir. 2004)).

---

of the due process complaint, the parties may proceed to an impartial hearing 20 U.S.C. § 1415(f)(1)(B)(ii); 34 CFR § 300.510(b)(1); 8 NYCRR § 200.5(j)(2)(v).

The IHO is required to render a decision not later than 45 days after the expiration of the 30-day resolution period or the applicable adjusted time periods (34 CFR § 300.515(a); 8 NYCRR § 200.5(j)(5)), unless an extension has been granted at the request of either party (34 CFR § 300.515(c); 8 NYCRR § 200.5(j)(5)(i). If an IHO has granted an extension to the regulatory timelines, State regulation requires that the IHO issue a decision within 14 days of the date the IHO closes the hearing record. 8 NYCRR § 200.5(j)(5). Pursuant to state regulation, an IHO shall determine when the record is closed and notify the parties of the date the record is closed. 8 NYCRR § 200.5(j)(5)(v).

A party aggrieved by an IHO decision may appeal to the SRO by serving on the opposing party a Notice of Intent to Seek Review no later than 25 days from the date of the IHO decision to be reviewed (8 NYCRR § 279.2(b)), and a Notice of Request for Review and a Request for Review within 40 days of IHO decision (8 NYCRR § 279.4(a)). The Respondent has 5 business days to answer and cross-appeal, if desired. 8 NYCRR §§ 279.5(a), 279.4(f). The Petitioner has 5 business days to answer the cross-appeal. 8 NYCRR § 279.5(b). The SRO has 30 days from receipt of the request for review to issue a final decision. 34 CFR § 300.515(b)(1); 8 NYCRR § 200.5(k)(2).

**C.**    **Dismissal under Rule 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 555 (2007). The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct involved." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "When the well-pleaded facts 'do not permit the court to infer more than the mere possibility of misconduct,' the court must grant a motion to dismiss." *Yamashita v. Scholastic Inc.*, 936 F.3d 98, 104 (2d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 679). The court, in deciding a motion to dismiss, must "accept as true the factual allegations of the complaint, and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) (citation omitted). However, the court shall not give "effect to legal conclusions couched as factual allegations." *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombley*, 550 U.S. at 555).

The factual allegations of the complaint must be more than speculative, and must show the grounds upon which a plaintiff is entitled to relief beyond "labels and conclusions, and a formulaic recitation of a cause of action's elements." *Twombly*, 550 U.S. at 555. And "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A plaintiff must plead sufficient factual allegations which nudge their claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## POINT I

## THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS ACTION BECAUSE PLAINTIFFS FAILED TO EXHAUST THEIR ADMINISTRATIVE REMEDIES

The IDEA contains a mandatory exhaustion provision that requires exhaustion of administrative remedies before the filing of a civil action. 20 U.S.C. § 1415(i)(1)(A); *see also J.S.*, 386 F.3d at 112 ("It is well settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court[.]"). The exhaustion requirement also applies to non-IDEA claims that seek relief that is available under the IDEA. 20 U.S.C. § 1415(l). Specifically, "[t]he exhaustion requirement applies with equal force to claims under the ADA, the Rehabilitation Act, or other, similar laws when the plaintiff seeks relief for the denial of a FAPE." *J.T. v. de Blasio*, 500 F. Supp. 3d 137, 192 (S.D.N.Y. 2020). "Similarly, the exhaustion requirement applies to claims arising under § 1983 where those claims complain of a denial of a FAPE[,]" as well as "claims arising under the New York State Constitution and state regulations that expressly allege that plaintiff was denied a FAPE." *Id.* "A plaintiff's failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction." *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 483 (2d Cir. 2002).

As the Second Circuit has explained, the purpose of administrative exhaustion in IDEA cases is to "'channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances." *Cave*, 514 F.3d at 245-46 (quoting *Polera*, 288 F.3d at 487). Thus, the exhaustion requirement "allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record,

and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." *Polera*, 288 F.3d at 487; *see also Heldman v. Sobol,* 962 F.2d 148, 159 n. 17 (2d Cir. 1992) ("The exhaustion doctrine prevents courts from undermining the administrative process and permits an agency to bring its expertise to bear on a problem as well as to correct its own mistakes.")  At a minimum, this process "will at least have produced a helpful record because administrators versed in the relevant issues were able to probe and illuminate those issues for the federal court." *J.S.*, 386 F.3d at 113.  Any challenge to the adequacy of a disabled student's IEP, educational program, or the administration of a disabled student's education, whether made directly, or indirectly is "'a textbook example of the types of cases justifying administrative exhaustion.'" *Cave*, 514 F.3d at 246 (quoting *Hope v. Cortines*, 872 F. Supp. 14, 21 (E.D.N.Y. 1995)).

A plaintiff's failure to exhaust may be excused if "(1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002).  Though listed separately, these factors generally are analyzed under the "futility" rubric.  *See, e.g., Heldman*, 962 F.2d at 15 (exhaustion excused "when pursuit of the administrative remedies would be futile because the agency either was acting in violation of the law or was unable to remedy the alleged injury.")  As the Court in *J.S.* observed, in each case in which exhaustion has been excused, the Court "concluded it would be futile to complete the administrative review process because the hearing officer had no power to correct the violation." *J.S.*, 386 F.3d at 113.  It is the plaintiffs' burden to prove the applicability of the exception.  *See*

*Cave*, 514 F.3d at 249 (citing *Polera*, 288 F.3d at 488 n.8 and *Honig*, 484 U.S. at 327); *S.W. by J.W. v. Warren*, 528 F. Supp. 2d 282, 293 (S.D.N.Y. 2007) (citing *Murphy*, 297 F.3d at 199).

In this matter Plaintiffs purport that they meet all three criteria because they allege that Defendants have no policy or practice to ensure that students struggling with School Avoidance receive a FAPE, that the relief they seek, i.e. the creation of program designed to identify students struggling with School Avoidance and remediate the School Avoidance, is unavailable through the administrative process, and that the administrative process is inadequate because of the length of time it takes to complete. *See* Compl. at ¶¶ 163-171. Plaintiffs' arguments are without merit.

For exhaustion to be excused, "the claimant's 'problems could not have been remedied by administrative bodies because the framework and procedures for addressing and placing students in appropriate education programs were at issue, or because the nature and volume of complaints were incapable of being corrected by the administrative hearing process.'" *Reyes v. Bedford Cent. Sch. Dist.*, 2017 U.S. Dist. LEXIS 159568, *30 (S.D.N.Y. Sept. 27, 2017) quoting *J.S.* 386 F. 3d at 113. Here, it is readily apparent that not only is the administrative process capable of correcting this issue, but that it has actually addressed the issue for parties who engage with it when they are dissatisfied with how a student's School Avoidance is being handled.

The Second Circuit has acknowledged that the administrative process provides relief for students suffering from School Avoidance, explaining in *L.O. v. N.Y. City Dep't of Educ.* that the parent had successfully challenged a subsequent IEP due in part to its "failure to address K.T.'s school avoidance behaviors." 822 F.3d 95, 113 n. 15 (2d Cir. 2016). Furthermore, Courts in this Circuit have issued decisions stemming from administrative appeals pursuant to the IDEA where Plaintiffs claim there was a denial of a FAPE due, in part, to the purported inadequacy of a district's response to a student's School Avoidance. *See B.Z. v. Hewlett Woodmere Union Free Sch. Dist.*,

2025 U.S. Dist. LEXIS 14032 (E.D.N.Y. Jan. 27, 2025) (finding that a student was denied a FAPE partially because the IEP did not include a plan to address the student's School Avoidance); *B.M. v. Plesantville Union Free Sch. Dist.*, 2021 U.S. Dist. LEXIS 183330 (S.D.N.Y. Sept. 24, 2021) (finding a student was provided a FAPE, *inter alia*, because the district was able to show how it would address the student's School Avoidance); *CN v. Katonah Lewisboro Sch. Dist.*, 2020 U.S. Dist. LEXIS 239811 (S.D.N.Y. Dec. 21, 2020) (finding a student had not been denied a FAPE, *inter alia*, based on the recommendation for the student to participate in a program that helped address School Avoidance).

Further, there are multiple administrative decisions involving a parent's challenge to a child's IEP due, in part, to dissatisfaction with how NYCPS planned to address the issue of School Avoidance. Tellingly, these decisions demonstrate the multiple ways in which School Avoidance can be addressed and the necessarily individualized nature of these solutions for particular students. In *In re: Student with a Disability* 124 LRP 25144 (Sep. 30, 2021) (annexed as Exhibit A to the Declaration of Assistant Corporation Counsel Kendra Elise Riddleberger, dated February 14, 2025 (Riddleberger Decl.)) an IHO found the student had been denied a FAPE and that due to the Student's history and struggle with School Avoidance a full-time therapeutic environment was necessary, awarding the Parents reimbursement for both tuition and transportation costs. In *In re: Student with a Disability* 124 LRP 42708 (Jan. 11, 2023) (Exhibit B of Riddleberger Decl.), Defendants argued that the student's absences were unrelated to their disabilities. The IHO found that while some absences were due to illness, the Student's other missed time should have been further investigated by Defendants and that by not doing so the Student had been denied a FAPE. *Id*. As such, the IHO awarded the Student compensatory education in the form of a bank of 723 hours. *Id*.

However, there are also cases where it is alleged that a student is dealing with School Avoidance where the administrative process results in a decision that special education services are *not* appropriate to address the issue.  In *In re: Student with a Disability* 121 LRP 27673 (July 16, 2021) (Exhibit C of Riddleberger Decl.) the parent appealed from an IHO's Finding of Fact and Decision (FOFD) which held that the student's emotional difficulties and School Avoidance had not interfered with his learning making him ineligible for special education services.  The SRO upheld this decision.  *Id*. at fn. 18.

A court in the District of Maryland addressed the issue of whether School Avoidance is related to a child's disability at length in *LaSheik Lee v. Bd. of Educ. For Prince George's County Cnty.* where a parent challenged the IEP because, among other things, it did not address the student's School Avoidance.  2024 U.S. Dist. LEXIS 16589, *6  (D. Md. Jan. 31, 2024).  The court explained that where an IEP does not address a child's persistent absences it can only be found inadequate where "the 'absence was linked to [the child's] disability.'"  *Id*. at *65, citing *Lamoine Sch. Comm. V. Ms. Z ex rel. N.S.*, 353 F. Supp. 2d. 18, 33-34 (D. Me. 2005).  The Court found that plaintiff had failed to establish a causal connection between the student's anxiety and his School Avoidance, because beyond simply stating that the absences were caused by anxiety, plaintiff offered no evidence to support such a finding.  *Id*. at *68-69.  The court stressed that the IDEA did not make schools responsible for all poor behavior of a student and to hold so would "exponentially enlarge the burden [the] IDEA places on state and local education authorities."  *Id*. at *69.

As the Ninth Circuit explained in *Hoeft v. Tucson Unified Sch. Dist.*

> Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, afford full exploration of technical educational issues, further development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct

shortcomings in their educational programs for disabled children.
967 F.2d 1298, 1303 (9th Cir. 1992)

Here, as in *Hoeft*, there are myriad factual questions for a hearing officer to resolve—including the threshold issue of whether a student's School Avoidance is related to their disability—to determine whether an individual Plaintiff has been denied a FAPE. *See Doe v Arizona Dept. of Educ.*, 111 F.3d. 678, 683 (9th Cir. 1997) (rejecting a class claim that exhaustion was not required where "the "court might have to resolve a number of factual issues within the Department's expertise" to determine whether individual students are receiving a FAPE and further holding that the fact that "the class might not get class-based or injunctive relief is not decisive.").

Plaintiffs' argument that engagement with the administrative process would have been futile because of "the extensive time required to complete the administrative process" is also misplaced. Amended Compl. at ¶ 171. "Futility is not measured by the fact that it takes time to hold hearings." *J.T.* 500 F. Supp. 3d at 194. This is particularly apt here where none of the Plaintiffs even attempted to engage with the administrative process despite alleging struggles with School Avoidance for multiple school years. Amended Compl. at ¶¶ 24-27; 107; 121; 138; 153. As the Court highlights in *J.T.*, where a Plaintiff is unable to specifically allege that their impartial hearing has been delayed, any argument involving the timing of the administrative process is premature. 500 F. Supp 3d. at 194. In the present case, Plaintiffs simply state that there are delays in the administrative process without offering any evidence that Plaintiffs themselves ever even filed Due Process Complaints and, as such, any argument related to the time it takes to adjudicate a dispute and issue a decision in an Impartial Hearing is premature and should not be considered by the Court. *See id.*

It is readily apparent that Plaintiffs cannot establish that they are excused from having to exhaust the administrative process. As the case law and administrative opinions amply

demonstrate, the administrative process can address the issue that is currently before this Court, and Plaintiffs are required to exhaust their administrative remedies before bringing the matter before this Court. *See Reyes* 2017 U.S. Dist. LEXIS 159568 at *30. As such, Plaintiffs' failure to exhaust their administrative remedies is fatal to their claims and this matter should be dismissed in its entirety with prejudice.

**POINT II**

**PLAINTIFFS' SECTION 504 AND ADA
CLAIMS SHOULD BE DISMISSED AS
DEFENDANTS HAVE NOT ACTED WITH
BAD FAITH OR GROSS MISJUDGMENT**

Plaintiffs' claims pursuant to Section 504 and the ADA should be dismissed for failure to state a claim. "Though there are 'subtle differences between the ADA and the Rehabilitation Act, [the Court] generally 'treat[s] claims under the two statutes identically,' applying the same standards to both." *See Killoran v. Westhampton Beach Sch. Dist.*, 2023 U.S. App. LEXIS 17767 at *4 (2d Cir. July 13, 2023) quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d. Cir. 2003). Plaintiffs must show that (1) they are qualified individuals with a disability; (2) that the Defendants are subject to one of the Acts; and (3) Plaintiffs were denied the opportunity to participate in or benefit from Defendants' services, programs, or activities, or were otherwise discriminated against by Defendants because of their disabilities. *See id* at *4-5. However, "[e]vidence of an IDEA violation, without more…is insufficient to demonstrate a violation under either Act." *Id*. at *5.

Here, Plaintiffs have essentially restated their claim under the IDEA and the Courts have been clear that doing so does not infer bad faith or misjudgment. *See T.J. ex rel. B.W. v. Bd. of Educ.*, 2019 U.S. Dist. LEXIS 171583, *48-49 (S.D.N.Y. Sept. 30, 2019) ("[T]he Amended Complaint simply restates the IDEA claim…[w]ithout further plausible allegations of bad faith or gross misjudgment <u>in addition to</u> the IDEA violation, the Amended Complaint does not state a

17

claim…under the ADA or [S]ection 504).  Plaintiffs simply stating, without any evidence, that Defendants have "longstanding knowledge" of "thousands of students" who suffer from School Avoidance and have failed to correct the issue and that such an act "constitutes bad faith or gross misjudgment" is insufficient to rise to a violation of 504 or the ADA.  Amended Compl. at ¶¶ 188, 200; T.J. 2019 U.S. Dist. LEXIS 171583 at *50.  As such, Plaintiffs' Section 504 and ADA claims should be dismissed.

**POINT III**

**PLAINTIFFS' CLAIMS PURSUANT TO § 1983 SHOULD BE DISMISSED AS THE PROCEDURAL SAFEGUARD OF THE IDEA WERE AVAILABLE TO THEM**

Plaintiffs' claims under 42 U.S.C. §1983 should also be dismissed as the procedural safeguards of the IDEA were available to them. Where IDEA and §1983 claims are brought simultaneously, a plaintiff must prove that a constitutional violation occurred "outside the scope of the IDEA." *A.K. v. Westhampton Beach Sch. Dist.*, 2019 U.S. Dist. LEXIS 167085 at *44 (E.D.N.Y. Sept. 27, 2019) (citations omitted). That is, Plaintiffs cannot use § 1983 to obtain damages for IDEA violations absent allegations that they were denied IDEA's "procedural safeguards or administrative remedies." *Streck v. Bd. of Educ. of E. Greenbush Sch. Dist*., 280 F. App'x 66, 68 (2d Cir. 2008).  Plaintiffs' Amended Complaint is devoid of any allegation or evidence that they were denied the IDEA's procedural safeguards or administrative remedies; in fact, Plaintiffs affirmatively state that they chose not to avail themselves of such remedies. Amended Compl. at  ¶¶ 107; 121; 138; 153.  Here, Plaintiffs do not show their violations occurred outside of the IDEA; as such, Plaintiffs' §1983 claims should be dismissed.

POINT IV

**PLAINTIFFS' CLAIMS UNDER THE NEW YORK CITY HUMAN RIGHTS LAW SHOULD BE DISMISSED FOR FAILURE TO <u>STATE A CLAIM</u>**

Plaintiffs' claims under New York City Human Rights Law ("NYCHRL") should be dismissed for failure to state a claim. The Second Circuit has held that "while the NYCHRL is indeed reviewed 'independently from and more liberally than federal or state discrimination claims, it still requires a showing of some evidence from which discrimination can be inferred." *Ben-Levy v. Bloomberg*, 518 Fed. Appx. 17, 19 (2d Cir. 2013) quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009). Specifically, "[a] plaintiff asserting a claim of discrimination under the NYCHRL must allege that [they were] treated less because of [their] membership in a protected class." *Toth v. N.Y.C. Dep't of Educ.*, 718 F. Supp 3d 224, 234 (E.D.N.Y. 2024) ), report and recommendation adopted by *Toth*, 2024 U.S. Dist. LEXIS 133563 at *4-5 (E.D.N.Y. July 26, 2024), quoting *Gonzalez v. City of New York*, 377 F. Supp 3d 273, 300 (S.D.N.Y. 2019). Here, Plaintiffs have failed to do this and have offered nothing beyond "labels and conclusions" and do not allege any specific facts to establish the facial plausibility of this claim. *Id*. As such, this claim should be dismissed. Alternatively, the Court should decline to exercise supplemental jurisdiction over this claim.

POINT V

**PLAINTIFFS' CLAIM PURSUANT TO THE NEW YORK STATE CONSTITUTION SHOULD BE DISMISSED FOR FAILURE TO <u>STATE A CLAIM</u>**

Plaintiffs' claim pursuant to the New York State Constitution should be dismissed for failure to state a claim, as Article XI, Section 1 alone does not give rise to a legitimate claim of

entitlement to public education.  *See J.M. v. N.Y. City Dep't of Educ.*, 2015 U.S. Dist. LEXIS 110366, fn. 17 (S.D.N.Y. Aug. 20, 2015 ("The claim pursuant to Article XI of the New York State Constitution is dismissed because Article XI does not create a private cause of action"); *see also K.M. v. Hyde Park Cent. Sch. Dist.*, 381 F. Supp. 2d 343, fn. 16 (S.D.N.Y. 2005).

## **CONCLUSION**

For the reasons set forth above, Defendants respectfully request that their motion be granted in its entirety and that the Amended Complaint be dismissed, and that they be awarded such other and further relief as this Court deems just and proper.

Dated:        New York, New York
              February 14, 2025

                          MURIEL GOODE-TRUFANT
                          Corporation Counsel of the
                            City of New York
                          Attorney for Defendants
                          100 Church Street
                          New York, New York 10007
                          (212) 356-4377


                      By:  /s/*Kendra Elise Riddleberger*
                          Kendra Elise Riddleberger
                          Assistant Corporation Counsel

20

**CERTIFICATION PURSUANT TO RULE 7.1 (c) OF THE LOCAL RULES OF THE
UNITED STATES DISTRICT COURTS FOR THE SOUTHERN AND EASTERN
DISTRICTS OF NEW YORK**

According to Microsoft Word 365, the portions of the memorandum of law that must be

included in a word count contains 6,652 words, and complies with Rule 7.1(c) of the Local Rules

of the United States District Courts for the Southern and Eastern Districts of New York.

Dated:        February 14, 2025
              New York, New York

MURIEL GOODE-TRUFANT
Corporation Counsel of the
  City of New York
Attorney for Defendants
100 Church Street
New York, New York 10007
(212) 356-4377
kriddleb@law.nyc.gov


By:      */s/ Kendra Elise Riddleberger*
         Kendra Elise Riddleberger
         *Assistant Corporation Counsel*