**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| C.S., by her parent, K.S.;<br>M.T., by her parent, N.T.;<br>H.B., by his parent, V.B.;<br>C.I.R., by her parent, C.R.;<br><br>on behalf of themselves and all others similarly situated,<br><br>   Plaintiffs,<br><br>  v.<br><br>NEW YORK CITY PUBLIC SCHOOLS, and MELISSA AVILES-RAMOS, as Chancellor of New York City Public Schools,<br><br>   Defendants. | Case No: 1:24-cv-07600-JGK |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................1

FACTUAL BACKGROUND.............................................................................2

STANDARD OF REVIEW ..............................................................................4

ARGUMENT ....................................................................................................5

I.   The Administrative Exhaustion Requirement Does Not Apply to Plaintiffs' Action ...............5

   A.  It Would Be Futile to Resort to the Administrative Process to Address Defendants' Systemic Violations ................................................................ 6

   B.  Administrative Remedies Cannot Provide Adequate Relief to Tens of Thousands of Students with Disabilities Suffering From School Avoidance ...................................... 9

   C.  The Court Should Reject Defendants' Attempt to Reframe the Amended Complaint as Challenging the Adequacy of the Named Plaintiffs' Individual IEPs......................... 10

II.  The Amended Complaint Adequately Alleges Defendants' "Bad Faith or Gross Misjudgment" ................................................................................................14

III. There is No Basis to Dismiss Plaintiffs' NYCHRL, New York State Constitution, and Section 1983 Claims .............................................................................16

CONCLUSION..................................................................................................16

## TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*J.R. ex rel. Analisa v. Austin Indep. Sch. Dist.*,
    574 F. Supp. 3d 428 (W.D. Tex. 2021)................................................................13

*Anderson News, L.L.C. v. Am. Media, Inc.*,
    680 F.3d 162 (2d Cir. 2012)..............................................................................4

*Arar v. Ashcroft*,
    585 F.3d 559 (2d Cir. 2009)..............................................................................4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................................4

*B.M. v. Pleasantville Union Free Sch. Dist.*,
    No. 20-CV-2192 (KMK), 2021 WL 4392281 (S.D.N.Y. Sept. 24, 2021) .............11

*B.Z. v. Hewlett Woodmere Union Free Sch. Dist.*,
    No. 23-CV-01759 (OEM) (SIL), 2025 WL 339140 (E.D.N.Y. Jan. 27, 2025).....................11

*Bd. of Ed. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*,
    458 U.S. 176 (1982)..........................................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................................4

*C.Q. v. N.Y.C. Dep't of Educ.*,
    No. 21-cv-3 (JGK), 2024 WL 4979293 (S.D.N.Y. Dec. 3, 2024) ...........................14

*Cave v. E. Meadow Union Free Sch. Dist.*,
    514 F.3d 240 (2d Cir. 2008)..............................................................................11

*Doe v. Ariz. Dep't of Educ.*,
    111 F.3d 678 (9th Cir. 1997) .............................................................................12

*CN ex rel. EN v. Katonah Lewisboro Sch. Dist.*,
    No. 19-CV-6793 (CS), 2020 WL 7496435 (S.D.N.Y. Dec. 21, 2020)....................13

*F.C. v. N.Y.C. Dep't of Educ.*,
    No. 15 Civ. 6045 (PAE), 2016 WL 8716232 (S.D.N.Y. Aug. 5, 2016).............................6, 16

*Heldman v. Sobol*,
    962 F.2d 148 (2d Cir. 1992)..............................................................................6

*Hoeft v. Tucson Unified Sch. Dist.*,
   967 F.2d 1298 (9th Cir. 1992) ........................................................................12

*Hunt v. Pritchard Indus., Inc.*,
   Nos. 07 Civ. 0747(AJP), 07 Civ. 1382(JSR)(AJP), 2007 WL 1933904 (S.D.N.Y. July 3, 2007) .................................................................................................................4

*J.L. ex rel. J.P. v. N.Y.C. Dep't of Educ.*,
   324 F. Supp. 3d 455 (S.D.N.Y. 2018).......................................................... *passim*

*J.T. v. de Blasio*,
   500 F. Supp. 3d 137 (S.D.N.Y. 2020)...............................................................12

*S.W. ex rel. J.W. v. Warren*,
   528 F. Supp. 2d 282 (S.D.N.Y. 2007)..................................................................9

*M.H. ex rel. K.H. v. Mount Vernon City Sch. Dist.*,
   No. 13 CV 3596(VB), 2014 WL 901578 (S.D.N.Y. Mar. 3, 2014) ..................15, 16

*K.S. v. City of N.Y.*,
   No. 21-CV-04649 (PAC), 2023 WL 6608739 (S.D.N.Y. Oct. 10, 2023) ..............14

*L.O. v. N.Y.C. Dep't of Educ.*,
   822 F.3d 95 (2d Cir. 2016)................................................................................11

*Lee v. Bd. of Educ. for Prince George's Cnty.*,
   No. C.A. 22-957, 2024 WL 361330 (D. Md. Jan. 31, 2024) ...............................11

*Loeffler v. Staten Island Univ. Hosp.*,
   582 F.3d 268 (2d Cir. 2009)..............................................................................16

*M.G. v. N.Y.C. Dep't of Educ.*,
   15 F. Supp. 3d 296 (S.D.N.Y. 2014)..................................................6, 7, 8, 10

*Morgan Hill Concerned Parents Assoc. v. Cal. Dep't of Educ.*,
   No. 2:11–cv–3471–KJM–AC, 2013 WL 1326301 (E.D. Cal. Mar. 29, 2013)........13

*J.G. ex rel. Mrs. G. v. Bd. of Educ. of Rochester City Sch. Dist.*,
   830 F.2d 444 (2d Cir. 1987)..............................................................................13

*Mrs. W v. Tirozzi*,
   832 F.2d 748 (2d Cir. 1987)..............................................................................16

*Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*,
   297 F.3d 195 (2d Cir. 2002)............................................................................5, 6

*J.S. ex rel. N.S. v. Attica Cent. Schs.*,
   386 F.3d 107 (2d Cir. 2004)......................................................6, 7, 8, 9

*Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*,
    288 F.3d 478 (2d Cir. 2002)..................................................................................11

*Reyes v. Bedford Cent. Sch. Dist.*,
    No. No. 16-CV-2768 (KMK), 2017 WL 4326115 (S.D.N.Y. Sept. 27, 2017).......................11

*Rutherford v. Fla. Union Free Sch. Dist.*,
    No. 16-CV-9778 (KMK), 2019 WL 1437823 (S.D.N.Y. Mar. 29, 2019) ..............................14

*S.G. v. Success Acad. Charter Schs., Inc.*,
    No. 18 Civ. 2484 (KPF), 2019 WL 1284280 (S.D.N.Y. Mar. 20, 2019) ........................14, 15

*Simmons v. Murphy*,
    No. 23-288-cv, 2024 WL 2837625 (2d Cir. June 5, 2024)...................................................11

*In re: Student with a Disability*,
    121 LRP 27673 (July 16, 2021) ...........................................................................................12

*In re: Student with a Disability*,
    124 LRP 25144 (Sept. 30, 2021) .........................................................................................12

*In re: Student with a Disability*,
    124 LRP 42708 (Jan. 11, 2023) ...........................................................................................12

<u>Statutes and Codes</u>

Title 20, United States Code
    Section 1401......................................................................................................................5
    Section 1412.................................................................................................................5, 8
    Section 1413......................................................................................................................5

Title 42, United States Code
    Section 1983.............................................................................................................2, 5, 16

The Rehabilitation Act of 1973
    Section 504.......................................................................................................2, 5, 14, 15

<u>Rules and Regulations</u>

Title 34, Code of Federal Regulations
    Section 300.131(a) .............................................................................................................8

## PRELIMINARY STATEMENT

This case is about Defendants' systemic failure to address the pervasive problem of School Avoidance among students with disabilities in New York City.[1]  While some 90,000 students with disabilities eligible to attend New York City public schools are chronically absent from school, NYCPS has no policy in place to prevent or address School Avoidance in a systemic way and ensure that those students receive the free appropriate public education ("FAPE") to which they are entitled.  Defendants' failure violates their obligations under both federal and state law and calls for the intervention of this Court to ensure that they establish a comprehensive program to identify students suffering from School Avoidance and remediate that School Avoidance with the goal of returning those students to the classroom.

Defendants' exhaustion argument fundamentally misapprehends the nature of Plaintiffs' claim, framing the Amended Complaint as concerning only Defendants' failures to adequately address the Individualized Education Programs ("IEPs") of the four named Plaintiffs.  But while Defendants' denial of a FAPE to the named Plaintiffs—each of whom struggles with School Avoidance—certainly reflects Defendants' systemic failure to comply with their obligations under the Individuals with Disabilities in Education Act ("IDEA"), this litigation (and the remedy it seeks) is not so narrow.  Rather, Plaintiffs allege there are thousands, if not tens of thousands, of students in New York City suffering from School Avoidance and that Defendants have failed on a systemic level to evaluate students, inform parents of their due process rights, train staff, and

---

[1] Capitalized terms not defined here have the meaning given to them in the Amended Complaint (Dkt. 23), which is referred to as "Am. Compl."  Defendants' Memorandum of Law In Support of Their Motion to Dismiss (Dkt. 32) is referred to as "Defs.' Br."

develop programs to assist students return to school. The Amended Complaint seeks to ensure that Defendants meet their obligations not only to the four named Plaintiffs, but to all New York City students suffering from School Avoidance, whose condition is being unaddressed. Because the administrative process is neither designed to remedy Defendants' systemic policy failures, nor capable of doing so, this Court's precedent makes clear that exhaustion is not required.

Defendants' motion also fails to show why Plaintiffs' other claims should be dismissed. Having been on notice for years of the challenges of School Avoidance, and their legal obligations to address it, Defendants' failures amount to the "bad faith or gross misjudgment" that sustains Plaintiffs' claims under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504"). Moreover, because Plaintiffs' IDEA, ADA, and Section 504 claims must proceed, there is also no basis to grant Defendants' request to dismiss Plaintiffs' claims for relief under the New York City Human Rights Law ("NYCHRL"), the New York State Constitution, or 42 U.S.C. § 1983 ("Section 1983"). Defendants' motion should be denied in its entirety.

## **FACTUAL BACKGROUND**

School Avoidance is a condition resulting from overwhelming feelings of anxiety and stress that cause a child to refuse to attend school. Am. Compl. ¶ 55. While many students with School Avoidance are chronically absent from school (defined by NYCPS as having an attendance rate of under 90%), even children who are absent from school less frequently than that threshold can suffer from School Avoidance. *Id.* ¶¶ 53, 83. The condition is most effectively addressed when an intervention plan is developed immediately (i.e., within two weeks). *Id.* ¶ 57 & n.12. The longer a child struggling with School Avoidance does not attend school, the harder it is for them to return. *Id.* ¶ 57.

2

Chronic absenteeism disproportionately affects students with disabilities. *Id.* ¶ 55. According to the most recent publicly available data from NYCPS, nearly half of students with disabilities in New York City—some 87,674 students in all—were chronically absent during the 2022-23 school year. *Id.* ¶¶ 54, 56 & nn.10-11. In addition to missing instruction time, students with disabilities who suffer from School Avoidance also lose access to necessary services and accommodations to which they are entitled through their IEP when they are away from the classroom. *Id.* ¶ 5.

Defendants have acknowledged a significant increase in chronic absenteeism (and, by extension, School Avoidance) among New York City students in the years since the COVID-19 pandemic. *Id.* ¶¶ 55, 58. Defendants' publicly available materials also recognize the negative educational impact of School Avoidance. *Id.* ¶¶ 12, 94. Defendants do not have any policy or program in place to prevent or address School Avoidance among students with disabilities who are eligible to attend New York City Public Schools. *Id.* ¶ 59. Defendants track student attendance issues by, among other means, conducting "407 Investigations" and by inputting student attendance data in the NYCPS iLog system. *Id.* ¶¶ 84–88 & n.14. Neither mechanism includes means for identifying whether a student's absence is the result of School Avoidance. *Id.* ¶¶ 84–88. Defendants also do not have a mandatory procedure for evaluating students with School Avoidance. *Id.* ¶ 90. Defendants' procedures recognize that staff should consider conducting a Functional Behavioral Assessment ("FBA") for students with School Avoidance, *id.* ¶ 94, but in practice parents are frequently advised that an FBA cannot be conducted until the student returns to school. *Id.* ¶¶ 89–96. As a result, students who struggle with School Avoidance do not receive support services listed on their IEPs because they are not in the school building. *Id.* ¶¶ 62–69. Instead of developing and implementing a program that would provide students the supports,

services, and accommodations to which they are entitled, Defendants sometimes offer Home Instruction ("HI"), a short-term program that falls well short of a FAPE. *Id.* ¶¶ 70–78.

C.S., M.T., H.B., and C.I.R.—the named Plaintiffs—are four of many students with disabilities in New York City who struggle with School Avoidance. Each of these students has struggled with School Avoidance for several years. *Id.* ¶¶ 97–98, 108–09, 122, 124, and 139–40. Their circumstances reflect those of many other students with disabilities who struggle with School Avoidance. Staff at the named Plaintiffs' various schools have not conducted FBAs. *Id.* ¶¶ 104, 118, 134, and 144–45. Nor have they offered meaningful (or, in most case, any) plans or strategies to help these students return to school. *Id.* ¶¶ 104, 117, 127, 134, and 144–45. In one case, school staff insisted that the named Plaintiff be homeschooled instead, without advising her parent about the possibility of HI. *Id.* ¶¶ 144–45. They also have not received the counseling or therapy services mandated by their respective IEPs while they have been away from the classroom. *Id.* ¶¶ 106, 119, 147.

## STANDARD OF REVIEW

On a motion to dismiss, the Court must assume well-pled factual allegations are true, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) (quoting *Roth v. Jennings,* 489 F.3d 499, 501 (2d Cir.2007)). Plaintiffs need only plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Fact-specific questions cannot be resolved on the pleadings." *Anderson News, L.L.C. v. Am. Media, Inc*., 680 F.3d 162, 185 (2d Cir. 2012) (citation omitted). "The standards for dismissal under Rule 12(b)(6) and 12(b)(1) are substantively identical." *Hunt*

*v. Pritchard Indus., Inc.*, Nos. 07 Civ. 0747(AJP), 07 Civ. 1382(JSR)(AJP), 2007 WL 1933904, at *3 n.4 (S.D.N.Y. July 3, 2007) (citations omitted).

## ARGUMENT

### I.    The Administrative Exhaustion Requirement Does Not Apply to Plaintiffs' Action

Defendants' motion to dismiss Plaintiffs' IDEA claim fails because it hinges entirely on the incorrect assertion that Plaintiffs were required to exhaust their administrative remedies before bringing this action. For the same reasons as those set forth below, Defendants' parallel argument regarding Section 504, the ADA, the New York State Constitution, and Section 1983 also fails. *See* Defs.' Br. at 2.

The IDEA requires that NYCPS, as the local education agency in New York City, ensure that students with disabilities receive a FAPE. 20 U.S.C. §§ 1412, 1413. A FAPE includes "special education and related services"—both "instruction" tailored to meet a child's "unique needs" and sufficient "supportive services" to permit the child to benefit from that instruction. 20 U.S.C. § 1401(9), (26), (29); *see also Bd. of Ed. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 203 (1982). The IDEA requires that NYCPS identify students with disabilities and "develop[], review[], and revise[]" an individualized education program ("IEP") for each student with a disability. 20 U.S.C. § 1412(a)(3), (4).

Although a plaintiff is ordinarily required to exhaust administrative remedies before bringing an action for a violation of the IDEA, the administrative exhaustion requirement relied upon by Defendants "is not an inflexible rule." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002) (citation omitted). As Defendants concede, this requirement does not apply if "(1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the

law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies." *Id.* (citations omitted); *see also* Defs.' Br. at 12.

Courts have long recognized that exhaustion of administrative remedies in IDEA cases is futile in cases involving systemic violations that cannot be "remedied by [local or state] administrative bodies because the framework and procedures for assessing and placing students in appropriate educational programs were at issue, or because the nature and volume of complaints were incapable of correction by the administrative hearing process." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 114 (2d Cir. 2004); *accord  J.L. ex rel. J.P. v. N.Y.C. Dep't of Educ.*, 324 F. Supp. 3d 455, 464 (S.D.N.Y. 2018); *F.C. v. N.Y.C. Dep't of Educ.*, No. 15 Civ. 6045 (PAE), 2016 WL 8716232, at *6 (S.D.N.Y. Aug. 5, 2016).  *See M.G. v. N.Y.C. Dep't of Educ.*, 15 F. Supp. 3d 296, 303 (S.D.N.Y. 2014) ("The same rationale applies where 'an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law,' [or] where the local educational agency failed to notify parents of their due process rights and thereby 'deprived [them] of the opportunity to take advantage of the procedural safeguards offered by the statute.' … [L]engthy delays in the administrative process may justify a finding that exhaustion would be futile or inadequate." (citations omitted)); *see also Heldman v. Sobol*, 962 F.2d 148, 158–59 (2d Cir. 1992) ("The futility exception is particularly relevant in actions, such as the one at hand, that allege systemic violations of the procedural rights accorded by IDEA").

## A.    It Would Be Futile to Resort to the Administrative Process to Address Defendants' Systemic Violations

Plaintiffs in this case are exempt from the exhaustion requirement because "the plaintiffs' problems [cannot be] remedied by administrative bodies because the framework and procedures for assessing and placing students in appropriate educational programs [are] at issue." *J.S.*, 386 F.3d at 114.  In *J.S.*, a group of plaintiffs brought suit against their school district alleging denial

of a FAPE, including that the school district had failed to provide students with disabilities adequate access to facilities, therapy services, and accommodations to which they were entitled, and had also failed to provide appropriate training. *Id.* at 110–12. The Second Circuit affirmed the district court's conclusion that plaintiffs were excused from the administrative exhaustion requirement because their complaint brought "allegations of systemic violations" that were "aimed at wrongdoing that is inherent in the program itself and not directed at any individual child." *Id.* at 113 (internal quotation marks omitted).

Similarly, in *J.L.*, parents of three "severely disabled children" alleged "a systemic breakdown" in the defendant's policies and procedures that "hobbled the efforts of the disabled students in this case from securing the services they need," leaving them "with no other choice but to sit out significant periods of the school year." 324 F. Supp. 3d at 460. The court excused the plaintiffs in *J.L.* from administrative exhaustion because defendant's alleged failure "stem[med] not from a dispute regarding the scope of an IEP, but primarily from DOE's policies." *Id.* at 465 (citation omitted). And in *M.G.*, the district court held that exhaustion of administrative remedies was not required for plaintiffs who had alleged, among other things, that defendant had failed to provide appropriate notification to parents of their due process rights and because administrative hearing officers lacked the authority to provide the systemic relief plaintiffs were seeking. 15 F. Supp. 3d at 304–05.

The series of systemic violations alleged by Plaintiffs in the instant case are similarly not subject to exhaustion. The Amended Complaint explicitly alleges that NYCPS has failed to implement a system-wide policy to address School Avoidance. Am. Compl. ¶¶ 9, 19, 59–61, 159–60, and 166. It further alleges that NYCPS fails to conduct evaluations and provide mandatory therapy and counseling services to students who remain at home as a result of School Avoidance.

7

*Id.* ¶¶ 69, 95–96[2]; *see also J.S.*, 386 F.3d at 110–12 (allegations that plaintiffs did not receive, among other things, assistive technology services, physical and occupational therapy); *J.L.*, 324 F. Supp. 3d at 460 (allegations that plaintiffs did not receive "nursing, transportation, and porter services" causing them to remain at home). Just as in *J.S.*, the Amended Complaint also alleges that NYCPS does not provide adequate training to its staff to help students with School Avoidance return to the classroom. Am. Compl. ¶ 63; *see J.S.*, 386 F.3d at 112. The Amended Complaint also alleges that NYCPS—in plain violation of its Child Find obligation[3]—fails to identify students struggling with School Avoidance because NYCPS has deficient policies for assessing and evaluating chronically absent students. Am. Compl. ¶¶ 83–96. Among other outcomes, Defendants' inability to identify these students also prevents parents and/or guardians from knowing their due process rights. *See M.G.*, 15 F. Supp. 3d at 303 ("Exhaustion may also be excused where the local educational agency failed to notify parents of their due process rights").

Furthermore, Defendants have no "systemic policies or procedures to ensure that students suffering from School Avoidance receive a FAPE." Am. Compl. ¶ 9; *see also id.* ¶¶ 59–61, and 166. As a direct result of Defendants' failure to develop and implement such policies and procedures, NYCPS students with School Avoidance are denied equal access to education. *Id.* ¶ 19. The administrative process lacks the authority necessary to provide appropriate relief for Defendants' violations. Although hearing officers "have the authority to enforce established

---

[2] Notably, Defendants do not allege that the systemic claim was not adequately pleaded.

[3] The "Child Find" obligation under the IDEA requires local educational agencies to have policies and procedures in place to identify, locate, and evaluate all disabled students who require special education and related services. 20 U.S.C. §§ 1412(a)(3)(A), (10)(A)(ii)(I); 34 C.F.R. § 300.131(a).

regulations, policies and procedures, they generally do not have the authority to set new policies or to alter existing ones." *S.W. ex rel. J.W. v. Warren*, 528 F. Supp. 2d 282, 294 (S.D.N.Y. 2007) (quoting *Michaels v. Mills*, No. 02–CV–0555E(F), 2004 WL 816918, at *3 n.30 (W.D.N.Y. Feb. 14, 2004)). As none of these violations may be remedied without implementing new policies or altering NYCPS's existing ones, a hearing officer "ha[s] no power to correct" any of them. *J.S.*, 386 F.3d at 113. Accordingly, it would be futile for Plaintiffs to seek a remedy through the administrative process.

### B. Administrative Remedies Cannot Provide Adequate Relief to Tens of Thousands of Students with Disabilities Suffering From School Avoidance

The administrative exhaustion requirement is also excused here because the "***volume*** of complaints [a]re incapable of correction by the administrative hearing process." *Id.* at 114 (emphasis added). As alleged in the Amended Complaint, NYCPS data show that nearly half of all NYCPS students with disabilities—numbering nearly ***90,000 students*** in all—are chronically absent. Am. Compl. ¶ 156 & n.21. To require thousands, if not tens of thousands of parents, many of whom are under-resourced, to flood the administrative system with individual complaints concerning NYCPS's systemic failure to address School Avoidance would be absurd. Forcing thousands of parents to seek an individual adjudication concerning NYCPS's violations of its obligations with respect to School Avoidance would also lead to the "high probability of inconsistent results" that the exhaustion exception aims to avoid. *J.S.*, 386 F.3d at 114. Among others, different hearing officers might determine different periods of time are required for a student to be evaluated for School Avoidance.

These issues are further compounded by the lengthy timeframe—on average, 119 days—to complete the administrative hearing process. Am. Compl. ¶ 171. Notwithstanding Defendants' assertion that the protracted time to hold administrative hearings is of no moment, Defs.' Br. at 16,

a delay of that duration makes the administrative hearing process particularly inadequate for students struggling with School Avoidance, which is more effectively addressed with early treatment.  Am. Compl. ¶ 57.  Moreover, unlike students with other disabilities, who are still receiving *some* education while they seek additional support through the administrative hearing process, many students with School Avoidance receive no education at all for months.  *Id.* ¶ 171.  These "lengthy delays" also weigh in favor of "a finding that exhaustion would be futile or inadequate."  *See M.G.*, 15 F. Supp. 3d at 303 (citations omitted).

**C.    The Court Should Reject Defendants' Attempt to Reframe the Amended Complaint as Challenging the Adequacy of the Named Plaintiffs' Individual IEPs**

In an attempt to show that the administrative process is nevertheless capable of correcting their failure to implement a policy to ensure students with School Avoidance receive a FAPE, Defendants try to reframe the Amended Complaint as challenging the adequacy of Plaintiffs' individual IEPs.  *See* Defs.' Br. at 12.  Defendants' effort is unavailing.

The failures Plaintiffs aim to redress through the Amended Complaint "stem[] not from a dispute regarding the scope of an IEP, but primarily from [NYCPS's] policies."  *J.L.*, 324 F. Supp. 3d at 465 (citation omitted).  The relevant threshold question for this case is not whether any individual Plaintiff's "School Avoidance is related to their disability," as Defendants wrongfully contend (Defs.' Br. at 16), but rather whether Defendants have the policies and procedures in place to identify and assist all students who struggle with School Avoidance and are eligible to attend NYCPS.

Defendants fail to cite a single case with analogous pleadings that was dismissed for failure to exhaust.  In fact, several of the cases cited by Defendants show that cases seeking similar relief ***cannot*** be resolved through the administrative review process.  *Id.* at 12–13 (citing *J.S.*, 386 F.3d

10

at 113–15; *S.W.*, 528 F. Supp. 2d at 293–96; *Murphy*, 297 F.3d at 199–201; *Heldman*, 962 F.2d at 158–59).[4]

The remaining cases and administrative decisions cited by Defendants are inapposite because they concerned only the adequacy of individual IEPs (many of which mention School Avoidance only in passing) and did not involve allegations of systemic or policy failures. *See L.O. v. N.Y.C. Dep't of Educ.*, 822 F.3d 95 (2d Cir. 2016) (reference in a footnote to IEP's alleged failure to address attendance issues that started after IEP was developed); *B.Z. v. Hewlett Woodmere Union Free Sch. Dist.*, No. 23-CV-01759 (OEM) (SIL), 2025 WL 339140 (E.D.N.Y. Jan. 27, 2025) (noting, in case involving plaintiff's entitlement to reimbursement of tuition expenses, hearing testimony that plaintiff had previously refused to enter a particular school on same premises as prospective placement); *B.M. v. Pleasantville Union Free Sch. Dist.*, No. 20-CV-2192 (KMK), 2021 WL 4392281 (S.D.N.Y. Sept. 24, 2021) (concluding that IEP of plaintiff with social-emotional challenges, including school avoidance, did not amount to a denial of a FAPE); *Lee v. Bd. of Educ. for Prince George's Cnty.*, No. C.A. 22-957, 2024 WL 361330 (D. Md. Jan. 31, 2024) (plaintiff asserted that IEP should have been revised to address school avoidance concerns); *Reyes v. Bedford Cent. Sch. Dist.*, No. No. 16-CV-2768 (KMK), 2017 WL 4326115 (S.D.N.Y. Sept. 27, 2017) (action against school district for failure to timely identify

---

[4] Two of Defendants' cases—*Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240 (2d Cir. 2008) and *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478 (2d Cir. 2002)—are "no longer good law." *Simmons v. Murphy*, No. 23-288-cv, 2024 WL 2837625, at *4 (2d Cir. June 5, 2024) (quoting *Doe v. Franklin Square Union Free Sch. Dist.*, 100 F.4th 86, 102 (2d Cir. 2024)).

single plaintiff for disabilities); *In re: Student with a Disability* 124 LRP 25144 (Sept. 30, 2021) (Ex. A to Riddleberger Decl.) (history of school avoidance of student without IEP justified placement in residential program and tuition reimbursement); *In re: Student with a Disability* 121 LRP 27673 (July 16, 2021) (Ex. C to Riddleberger Decl.) (student's behaviors, including school refusal, did not qualify him for tuition reimbursement for private school placement). Notably, the IHO in *In re: Student with a Disability* 124 LRP 42708 (Jan. 11, 2023) (Ex. B to Riddleberger Decl.) concluded that a student with disabilities was denied a FAPE because the DOE undertook no assessments to identify—and had no program to address—the student's school avoidance. Although the IHO required that the DOE reimburse the student's parents for certain tuition and transportation expenses, the IHO did not—and could not—order the DOE to implement any policy changes to rectify its systemic deficiencies.[5]

---

[5] Defendants also cite three cases—two from outside this Circuit—involving failed assertions of systemic non-compliance, all of which are far afield from the facts here. *J.T. v. de Blasio*, 500 F. Supp. 3d 137, 147–48 (S.D.N.Y. 2020) involved a sprawling action with "many defects" purporting to sue every school district in the United States ("over 13,800 of them") for using remote learning during the Covid-19 pandemic. Nor did the court undertake any analysis of whether claims for systemic relief are excused from administrative exhaustion. *Id.* at 193–94. And neither the claims in *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298 (9th Cir. 1992) (action challenging district for not providing certain extended school services), nor in *Doe v. Ariz. Dep't of Educ.*, 111 F.3d 678 (9th Cir. 1997) (action challenging failure to provide educational services to juvenile students at a single correctional facility, which defendant cured once it learned students

And in fact, one of the cases Defendants cite, *CN ex rel. EN v. Katonah Lewisboro Sch. Dist.*, No. 19-CV-6793 (CS), 2020 WL 7496435, at *19 (S.D.N.Y. Dec. 21, 2020), shows why Plaintiffs' claims should be allowed to proceed.  In *CN*, the court concluded that the student in question had not been denied a FAPE because the school district had a program in place to assist families with children with School Avoidance—precisely what NYCPS lacks (and which, as set forth above, the administrative process cannot put in place).  *Id.*

Defendants' further suggestion that Plaintiffs cannot qualify for the futility exception because they have not resorted in the first instance to the administrative process is meritless.  *See* Defs.' Br. at 2, 16.  Courts regularly allow actions seeking systemic relief to proceed under the futility exception even where named plaintiff(s) have not first availed themselves of the administrative process.  *See, e.g.*, *J.L.*, 324 F. Supp. 3d at 455–70; *J.G. ex rel. Mrs. G. v. Bd. of Educ. of Rochester City Sch. Dist.*, 830 F.2d 444, 447 (2d Cir. 1987) (concluding that plaintiffs who brought systemic claims against school district "cannot be faulted for the lack of an administrative hearing and appeal") (citations omitted); *see also Morgan Hill Concerned Parents Assoc. v. Cal. Dep't of Educ.*, No. 2:11–cv–3471–KJM–AC, 2013 WL 1326301, at *9 (E.D. Cal. Mar. 29, 2013) (rejecting defendant's argument that plaintiffs were required to have a due process hearing and an appeal prior to seeking a remedy in federal court); *J.R. ex rel. Analisa v. Austin Indep. Sch. Dist.*, 574 F. Supp. 3d 428, 435 (W.D. Tex. 2021) (excusing plaintiffs from administrative exhaustion requirement for claims alleging "systemic issues" in defendant school district's evaluations of students with disabilities).  Indeed, the very reason this Circuit has

---

were detained in the facility) involved the sort of system-wide failure alleged in the Amended Complaint.

recognized exemptions from the IDEA's exhaustion requirement is that it would serve no purpose to require families to go through a lengthy and expensive administrative process that cannot provide the systemic relief being sought.

## II.    The Amended Complaint Adequately Alleges Defendants' "Bad Faith or Gross Misjudgment"

Defendants' arguments regarding Plaintiffs' Section 504 and ADA claims also fail because the Amended Complaint adequately alleges facts that demonstrate Defendants acted with "bad faith or gross misjudgment" in denying students with School Avoidance equal access to education. *S.G. v. Success Acad. Charter Schs., Inc.*, No. 18 Civ. 2484 (KPF), 2019 WL 1284280, at *13–14 (S.D.N.Y. Mar. 20, 2019) (citation omitted).  Plaintiffs are "not required to show personal animosity or ill will" to satisfy this condition; "gross negligence or reckless indifference" will suffice.  *Rutherford v. Fla. Union Free Sch. Dist.*, No. 16-CV-9778 (KMK), 2019 WL 1437823, at *34 (S.D.N.Y. Mar. 29, 2019) (citation omitted).

As alleged in the Amended Complaint, Defendants' own data make clear that chronic absenteeism is rampant among NYCPS students with disabilities.  Am. Compl. ¶ 156 & n.21. Defendants have also publicly acknowledged the significant increase in chronic absenteeism among NYCPS students since the COVID-19 pandemic.  *Id.* ¶ 58.  Despite being on notice for years of this crisis, Defendants have not yet developed, much less implemented, a plan to adequately address School Avoidance.  Such sustained callous inaction amounts to the "bad faith or gross misjudgment" required for Plaintiffs' Section 504 and ADA claims.  *See C.Q. v. N.Y.C. Dep't of Educ.*, No. 21-cv-3 (JGK), 2024 WL 4979293, at *8–9 (S.D.N.Y. Dec. 3, 2024) (denying motion to dismiss Section 504 claim based on defendant's "multi-year denial" of a FAPE, which "support[ed] the conclusion that policymakers acted with 'at least deliberate indifference' to the likelihood that [plaintiff's] rights had been violated") (citation omitted); *see also K.S. v. City of*

14

*N.Y.*, No. 21-CV-04649 (PAC), 2023 WL 6608739, at \*17 n.10 (S.D.N.Y. Oct. 10, 2023) (concluding that defendants' "persistent failure" to provide a FAPE was sufficient to allege Section 504 claim); *M.H. ex rel. K.H. v. Mount Vernon City Sch. Dist.*, No. 13 CV 3596(VB), 2014 WL 901578, at \*7 (S.D.N.Y. Mar. 3, 2014) ("bad faith or gross misjudgment" standard satisfied by allegations of "numerous and systemic failures" to identify students needing special education services and to remedy those despite awareness).

In addition, the allegations concerning the treatment of C.I.R. by the staff at P.S. 102 starkly illustrate that plaintiffs have stated a claim under Section 504 and the ADA. Am. Compl. ¶¶ 134-37. While acknowledging C.I.R.'s consistently poor attendance, the staff at P.S. 102 tried to rid themselves of their obligations by recommending that C.I.R.'s parents enroll her in homeschooling. School staff even withheld from C.I.R.'s parents the availability of any other options to help her—even a short term option like home instruction, which would have been provided by NYCPS in conjunction with P.S. 102. C.I.R.'s parents learned about HI only after they had accepted the school's direction to enroll her in homeschooling, only to be told by school staff that she was no longer eligible because, as a homeschooled student, she was removed from NYCPS's register. By misleadingly insisting to CIRs parents that she be homeschooled, the school plainly acted with bad faith indifference to her needs. *Id.* ¶¶ 80, 144. Courts in this district have found that similar conduct of misleading parents amounts to bad faith. *See S.G.*, 2019 WL 1294290, at \*15 (finding that school acted in bad faith when it misleadingly informed plaintiff's parent that plaintiff student needed to leave charter school network in order to obtain placement in a 12:1 class that was offered at other schools within the same network).

**III.    There is No Basis to Dismiss Plaintiffs' NYCHRL, New York State Constitution, and Section 1983 Claims**

The Court should also reject Defendants' request to dismiss Plaintiffs' claims under the NYCHRL, the New York State Constitution, and Section 1983.  As Defendants acknowledge, claims under the NYCHRL "must be reviewed independently from and more liberally than their federal and state counterparts."  *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009).  Because, as set forth above, Defendants' denial of a FAPE to the putative class of students with disabilities is adequately pled, there is no basis to dismiss Plaintiffs' NYCHRL claim under an even more liberal standard.

Defendants' also incorrectly suggest that Plaintiffs' claim under the New York State Constitution must be dismissed.  But that is contrary to what other courts in this district have concluded when asked to dismiss similar claims.  *See F.C. ex rel. T.C. v. N.Y.C. Dep't of Educ.*, No. 15 Civ. 6045 (PAE), 2016 WL 8716232, at *19 (S.D.N.Y. Aug. 5, 2016) (denying motion to dismiss New York State Constitution claim that asserted such a claim was "invalid").

The systemic violations outlined above also establish that the Amended Complaint adequately alleges that Defendants have engaged in "a pattern and practice of systematic . . . violations unable to be addressed at the due process hearings provided [by the State]."  *Mrs. W v. Tirozzi*, 832 F.2d 748, 755–57 (2d Cir. 1987).  Courts have allowed claims under Section 1983 to proceed in similar circumstances.  *M.H.*, 2014 WL 901578, at *8–9 (concluding that Section 1983 claim could proceed where "plaintiffs plausibly allege[d] they were denied a FAPE – an actionable constitutional deprivation under Section 1983").  The Court should do the same here.

**CONCLUSION**

Defendants' motion should be denied.

Dated: March 14, 2025
New York, New York

Respectfully submitted,

**THE LEGAL AID SOCIETY**
Twyla Carter, Attorney-in-Chief

By: _/s/ Susan J. Horwtiz_
Susan J. Horwitz, Supervising Attorney, Education
Law Project
Adriene Holder, Attorney-in-Chief, Civil Practice
Lilia Toson, Attorney-in-Charge, Civil Citywide Units
49 Thomas Street
New York, NY 10013
(212) 577-3300
shorwitz@legal-aid.org

**PILLSBURY WINTHROP SHAW
PITTMAN LLP**

By: _/s/ Jeffrey P. Metzler_
Jeffrey P. Metzler
Spencer E. Young
Sarah Rowan
31 West 52nd Street
New York, NY 10019-6131
(212) 858-1000
jeffrey.metzler@pillsburylaw.com
spencer.young@pillsburylaw.com
sarah.rowan@pillsburylaw.com

_Attorneys for Plaintiffs_

17

**CERTIFICATION PURSUANT TO RULE 7.1(c) OF THE LOCAL RULES OF THE UNITED STATES DISTRICT COURTS FOR THE SOUTHERN AND EASTERN DISTRICTS OF NEW YORK**

According to Microsoft Word, the portions of this memorandum of law that must be included in a word count contains 4,996 words, and complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

Dated:        March 14, 2025
              New York, New York

                                    By:    _/s/ Jeffrey P. Metzler_
                                           Jeffrey P. Metzler