**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

C.S., BY HER PARENT, K.S., ET AL.,

                    Plaintiffs,                24-cv-7600 (JGK)

        - against -                            <u>MEMORANDUM OPINION</u>
                                               <u>AND ORDER</u>
NEW YORK CITY PUBLIC SCHOOLS, ET
AL.,

                    Defendants.

_____

**JOHN G. KOELTL, District Judge:**

    The plaintiffs, four minor children and their parents,
brought this putative class action on behalf of themselves and
all others similarly situated against the defendants, New York
City Public Schools ("NYCPS") and Melissa Aviles-Ramos in her
official capacity as Chancellor of NYCPS. The plaintiffs claim
that the defendants' alleged failure to provide equal access to
education for students with "School Avoidance" violates the
Individuals with Disabilities in Education Act ("IDEA"), 20
U.S.C. § 1400 <u>et seq.</u>; the Americans with Disabilities Act
("ADA"), 42 U.S.C. § 12101 <u>et seq.</u>; Section 504 of the
Rehabilitation Act ("Section 504" or the "Rehabilitation Act"),
29 U.S.C. § 701 <u>et seq.</u>; the New York State Constitution; the
New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code
§ 8-101 <u>et seq.</u>; and 42 U.S.C. § 1983. The defendants have moved
to dismiss the Amended Class Action Complaint (the "Amended
Complaint") pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6). For the reasons stated below, the defendants' motion is **granted.**

## I.

## A.

The IDEA requires a state that receives federal funds to provide all children with disabilities with a free appropriate public education ("FAPE"). 20 U.S.C. § 1412(a)(1)(A); Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 107 (2d Cir. 2007). "Congress enacted the IDEA to assure that all children with disabilities have available to them a free appropriate public education which emphasizes special education and related services designed to meet their unique needs." Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195, 197 (2d Cir. 2002).[1]

The "centerpiece" of the IDEA scheme is the "individualized education program" ("IEP"). Id. The IEP, which is the product of "collaborations between parents, educators, and representatives of the school district, sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." Id. To comply with the IDEA, the IEP

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

"must be reasonably calculated to enable the child to receive educational benefits." L.O. v. N.Y.C. Dep't of Educ., 822 F.3d 95, 103 (2d Cir. 2016).

The IDEA includes "procedural safeguards that enable parents and students to challenge the local educational agency's decisions." Murphy, 297 F.3d at 197 (citing 20 U.S.C. § 1415). In New York, parents have recourse through a "two-tier system of administrative review." Id. (citing N.Y. Educ. Law § 4404). First, parents may challenge "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a FAPE to such child", which triggers an administrative review process by an impartial hearing officer ("IHO"). L.O., 822 F.3d at 103 (citing 20 U.S.C. § 1415(b)(6)(A)). Next, a party may appeal the decision of the IHO to a state review officer ("SRO"). Id. (citing 20 U.S.C. § 1415(g), (i)(2)(A); N.Y. Educ. Law § 4404(1)-(3)).

In general, an appeal may be filed in state or federal court only after the SRO has rendered a decision. Murphy, 297 F.3d at 197. However, exhaustion of the administrative process is not necessary if certain exceptions apply. See id. at 199.

**B.**

Unless otherwise indicated, the following facts are taken from the Amended Complaint and are accepted as true for purposes of deciding this motion.

The plaintiffs are four minor children—C.S., M.T., H.B., and C.I.R.—and their parents-K.S., N.T., V.B., and C.R. See Am. Compl. ¶¶ 24-27, ECF No. 23. Each minor plaintiff is or was a public school student in New York City. See id.

NYCPS is an agency of New York City that has control over educational matters affecting students in the City and is responsible for the general supervision and management of the City's public schools. Id. ¶ 28. Defendant Aviles-Ramos is the Chancellor of NYCPS. Id. ¶ 29. In that role, Aviles-Ramos is responsible for the day-to-day operations of NYCPS and all of the City's public schools. Id.

The plaintiffs allege that they are four of thousands of New York City public school students with disabilities who suffer from "School Avoidance" or are otherwise "chronically absent." See id. ¶¶ 1–2, 55–56. School Avoidance describes when children "find themselves overwhelmed and overstressed by the school environment and cope with their discomfort by avoiding school altogether." Id. ¶ 55.[2] The plaintiffs allege that School Avoidance is often most effectively addressed immediately—within two weeks. Id. ¶ 57 & n.12. The longer a student struggling with

---

[2] "School Avoidance" and "chronic absenteeism" are distinct concepts. For purposes of this action, "School Avoidance" refers to situations in which students "avoid approaching, entering, and/or remaining in school." Am. Compl. ¶ 3. Chronic absenteeism refers to an attendance rate under 90%. Id. ¶ 53. Not all students with School Avoidance are chronically absent. Id. ¶ 83.

School Avoidance continues to miss school, the harder it is for the student to return. Id. ¶ 57. Students whose disabilities cause them to avoid approaching, entering, or remaining in school lose not only crucial instruction time but also access to necessary services and accommodations that they would otherwise be receiving at school, such as speech-language therapy, occupational therapy, physical therapy, and counseling. Id. ¶¶ 3, 5.

The plaintiffs allege that the defendants have systematically failed to provide a FAPE to students whose disabilities cause them to suffer from School Avoidance. Id. ¶¶ 3-19. According to the plaintiffs, NYCPS has been on notice for years about the challenges of School Avoidance and its obligation to address the problem. Id. ¶¶ 9, 58. Nonetheless, NYCPS has allegedly failed to implement a system-wide policy or program to address the problem of School Avoidance. Id. ¶ 59. Instead, the plaintiffs allege, NYCPS typically ignores the situation, suggests that parents apply for Homebound Instruction ("HI"), or convinces parents to homeschool their child. Id. ¶ 60.

The plaintiffs allege that NYCPS often simply ignores the challenges facing students with School Avoidance and fails to offer meaningful accommodations to address those challenges. See id. ¶¶ 13-14. For example, services and accommodations that can

5

help students with School Avoidance return to the classroom include behavioral therapy, transportation to and from school, and training for school personnel. Id. ¶ 63. Rather than provide such accommodations or services to help students return to school, NYCPS allegedly shifts these obligations onto the students' parents instead. See id. ¶¶ 64–68. And when parents of these students request new evaluations and additional services, they are allegedly told by NYCPS staff that evaluations cannot be conducted when the student is not in school. Id. ¶ 69.

The plaintiffs also allege that, in some circumstances, NYCPS suggests that students with School Avoidance enroll in HI. See id. ¶ 15. HI is meant to be a short-term service that provides a limited number of hours of instruction in students' homes. Id. ¶¶ 70, 76.[3] To qualify for HI, a student must receive a recommendation from a physician or psychiatrist, which must then be approved by a reviewing physician from NYCPS or the Department of Health. Id. ¶ 70. HI students are required to receive a minimum of ten hours per week of instruction on the elementary level and fifteen hours per week on the secondary level. Id. ¶ 73. However, the plaintiffs allege that NYCPS routinely fails to provide HI students with the minimum hours of

---

[3] When provided for an extended period of time, HI does not comply with the requirements of the IDEA, Section 504, the ADA, or state law. Am. Compl. ¶ 77.

instruction to which they are entitled. Id. ¶ 74. Moreover, the minimum hours that HI students are supposed to receive are far fewer than what the students would receive if they were attending school. Id. ¶ 75. Furthermore, the plaintiffs allege that, when students receive HI, they typically do not receive the support, services, and accommodations to which they are entitled, often because schools fail to provide parents with the necessary authorization forms. Id. ¶ 78.

Another way in which NYCPS allegedly offloads its responsibility to educate students with School Avoidance is to recommend to students' families that the students be homeschooled. Id. ¶ 79. For example, in the case of C.I.R., the plaintiffs allege that school staff never advised C.I.R.'s parents that any options other than homeschooling were available to C.I.R. Id. ¶ 80.

In addition, the plaintiffs allege that NYCPS has failed to identify and evaluate students with School Avoidance effectively. Id. ¶ 82.

The plaintiffs acknowledge that NYCPS has policies in place to track school attendance and identify chronically absent students. Id. ¶¶ 83-84. However, the plaintiffs allege that these policies are deficient and inconsistently followed across schools, and that NYCPS does not engage in adequate outreach or have sufficient oversight of efforts to track and investigate

the attendance of students. Id. ¶¶ 84-86. Moreover, the plaintiffs allege that the existing policies do not include a process to identify students specifically struggling with School Avoidance, because School Avoidance is not coextensive with chronic absenteeism. See id. ¶ 83.

NYCPS also allegedly fails to evaluate students with School Avoidance adequately. Id. ¶¶ 89-90. Although NYCPS instructs its staff to "consider" conducting a Functional Behavior Assessment ("FBA") to assess "any behavior with an impact on learning," including issues like School Avoidance, the plaintiffs allege that NYCPS rarely complies with this directive. Id. ¶¶ 12, 91, 95.[4] Instead, NYCPS allegedly refuses to evaluate students at home, telling parents of students whose disabilities prevent them from attending school that the necessary evaluations will be conducted only once the student is "better" and back at school. Id. ¶ 95. The plaintiffs allege that the lack of evaluations renders it impossible to determine what services and accommodations would be most effective in helping the student return to school. Id. ¶ 96.

---

[4] Data obtained from an FBA should inform the development of a written Behavior Intervention Plan, which specifies the actions that school staff must take to address the behavior. Am. Compl. ¶ 92.

**C.**

The Amended Complaint also includes allegations specific to each plaintiff.

C.S., who is in eleventh grade and lives in Manhattan, has an educational classification of "Other Health Impairment" and has been diagnosed with agoraphobia, major depressive disorder, and social anxiety disorder. Id. ¶ 97. The plaintiffs allege that C.S. has struggled with School Avoidance since September 2019 and has cycled through various placements, including remote instruction, nonpublic schools, and HI, with limited success. Id. ¶¶ 24, 98-99, 103. Although C.S. is currently enrolled in a hybrid program, the plaintiffs allege that she attends only remote sessions and does not receive the counseling services required under her IEP. Id. ¶¶ 103-06.

M.T., who is in ninth grade and lives in Queens, has been diagnosed with autism spectrum disorder and intermittent explosive disorder. Id. ¶ 108. Due to her disabilities, M.T. has difficulty remaining still and tends to elope. Id. The plaintiffs allege that M.T. has struggled with School Avoidance since November 2023 and began avoiding school entirely after transferring schools and refusing transportation and entry into the school building. Id. ¶¶ 25, 113-16. M.T.'s mother inquired about HI in November 2023, which was allegedly not provided until March 2024, meaning that M.T. purportedly received no

9

instruction of any kind in the interim. Id. ¶¶ 117-18. Now, although M.T. receives HI, she does not get the speech and occupational therapy services required by her IEP. Id. ¶ 119. The plaintiffs allege that no FBA has been conducted and no plan to assist M.T. in returning to school has been developed. Id. ¶¶ 118, 120.

H.B., who is in tenth grade and lives in the Bronx, has been diagnosed with autism spectrum disorder, depression, and attention deficit/hyperactivity disorder. Id. ¶ 122. The plaintiffs allege that H.B. has struggled with School Avoidance since September 2018 and that although his mother requested a special education evaluation in January 2019, the school delayed conducting that evaluation for nearly a year and later refused to evaluate him because he was no longer attending school. Id. ¶¶ 124-26. H.B. was eventually recommended for a residential placement and provided with HI in the interim. Id. ¶¶ 127-28. H.B. eventually lost his residential placement due to continued absenteeism and went without any educational services during the 2022-2023 school year. Id. ¶¶ 130-32. In November 2023, H.B. enrolled in a fully remote high school program but allegedly continues to struggle with attendance. Id. ¶ 134. The plaintiffs allege that NYCPS failed to develop a plan to help H.B. attend school regularly. Id.

C.I.R., who is in fifth grade and lives in Manhattan, has been diagnosed with autism spectrum disorder and social anxiety disorder. Id. ¶ 139. C.I.R. is currently homeschooled. Id. The plaintiffs allege that C.I.R. began avoiding school in 2021. Id. ¶¶ 140–42. According to the plaintiffs, school staff's efforts to improve C.I.R.'s attendance were "modest," and C.I.R. continued to avoid attending school consistently. Id. ¶ 141. In January 2022, C.I.R. transferred schools, but continued to avoid school. Id. ¶ 143. Rather than conduct an FBA or offer accommodations, C.I.R.'s new school allegedly insisted that C.I.R. be homeschooled. Id. ¶ 144. When C.R., C.I.R.'s mother, later sought HI services as an alternative to homeschooling, C.R. was told that C.I.R. was now ineligible for HI as a homeschooled student. Id. ¶ 145. Although C.I.R. is entitled to speech, occupational, and physical therapy twice per week and counseling once per week, C.R. allegedly never received the necessary authorization forms to secure these services from NYCPS. Id. ¶ 147.

In October 2024, NYCPS held an IEP meeting and recommended that C.I.R. attend a New York State Nonpublic School ("NPS"), and in November 2024 C.I.R. enrolled at P.S. 206, a public school assigned by NYCPS as an interim placement while C.I.R. continued to wait for a seat at an NPS. Id. ¶¶ 149–50. But P.S. 206 informed C.R. that it could not meet C.I.R.'s needs, and

that therefore C.I.R. could not attend. Id. ¶ 151. The
plaintiffs allege that C.I.R. still has not enrolled at an NPS.
Id. ¶ 152.

### D.

None of the named plaintiffs has pursued the remedies
available through the administrative hearing process. See id.
¶¶ 107, 121, 138, 153. However, the plaintiffs contend that
administrative exhaustion would be futile and that therefore
their claims are exempt from the requirement. Id. ¶¶ 163-64.
According to the plaintiffs, the administrative process cannot
address the alleged systemic failures of the defendants because
the administrative scheme provides only individualized relief.
Id. ¶ 169. In particular, the plaintiffs claim that their
injuries were caused by the defendants' overall lack of policies
and practices of general applicability to ensure that students
with School Avoidance receive a FAPE. Id. ¶¶ 165-66. The
plaintiffs also assert that NYCPS fails on a systemic level to
evaluate students for School Avoidance, to train its employees
to identify and address School Avoidance, or otherwise to
address School Avoidance adequately. Id. ¶¶ 167-68.

The plaintiffs seek a range of relief, including: a
declaration that NYCPS's policies and practices (or lack
thereof) concerning School Avoidance violate federal, state, and
City law; a preliminary injunction ordering the defendants to

comply with their obligations under the IDEA and other relevant laws and to identify all class members; and an order requiring the defendants to submit to the Court "a comprehensive plan for a program designed to identify NYCPS students with School Avoidance" and to address such School Avoidance, with the goal of helping those students return to school. Id. at 38–39.

## II.

To prevail against a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, the plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In considering such a motion, the Court generally must accept the material factual allegations in the complaint as true. See J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004). However, the Court does not draw all reasonable inferences in the plaintiff's favor. Id.

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d

13

Cir. 1985). To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

When presented with a motion to dismiss a claim under both Rule 12(b)(1) and Rule 12(b)(6), the Court should consider the jurisdictional challenge first. See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

**III.**

In moving to dismiss, the defendants argue principally that the Court lacks subject-matter jurisdiction over this action because the plaintiffs failed to exhaust their administrative remedies as required by the IDEA. The plaintiffs do not dispute that they failed to exhaust the administrative process, but they respond that the exhaustion requirement is excused in this case.

**A.**

"It is well settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court." J.S., 386 F.3d at 112. The Second Circuit Court of Appeals has instructed that "the IDEA's exhaustion requirement is jurisdictional." Coleman v. Newburgh Enlarged City Sch. Dist., 503 F.3d 198, 203 (2d Cir. 2007). The exhaustion requirement ensures that "disputes related to the education of disabled children are first analyzed by administrators with expertise in the area who can promptly resolve grievances." J.S., 386 F.3d at 112. In more detail, exhaustion

> allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children.

15

Id. Even if the administrative process is ultimately
unsuccessful in resolving the dispute, "it will at least have
produced a helpful record because administrators versed in the
relevant issues were able to probe and illuminate those issues
for the federal court." Id. at 112–13.

However, the exhaustion requirement is "not an inflexible
rule." Murphy, 297 F.3d at 199. Congress has specified that
exhaustion is not necessary if "it would be futile to resort to
the IDEA's due process procedures"; "an agency has adopted a
policy or pursued a practice of general applicability that is
contrary to the law"; or "it is improbable that adequate relief
can be obtained by pursuing administrative remedies." Id. In
determining whether exhaustion should be excused, the Court
should "consider whether administrative review would further the
goals of developing facts, making use of available expertise,
and promoting efficiency." J.S., 386 F.3d at 113. The party
seeking to avoid exhaustion bears the burden of establishing the
applicability of one of these exceptions. Murphy, 297 F.3d at
199; see also J.S., 386 F.3d at 112.

Courts have applied the futility exception in cases that
allege "systemic violations", J.S., 386 F.3d at 113, where the
relevant agency was "unable to remedy the alleged injury" or was
"acting in violation of the law," Heldman ex rel. T.H. v. Sobol,

16

962 F.2d 148, 159 (2d Cir. 1992). For example, courts have excused the exhaustion requirement on futility grounds "because the framework and procedures for assessing and placing students in appropriate educational programs were at issue, or because the nature and volume of complaints were incapable of correction by the administrative hearing process." J.S., 386 F.3d at 114.

**1.**

The plaintiffs attempt to invoke the futility exception to exhaustion by contending that this case is about the defendants' "systemic failure to address the pervasive problem of School Avoidance among students with disabilities in New York City." Pltfs. Opp. at 1, ECF No. 36. In the plaintiffs' view, the alleged failure of the defendants to provide a FAPE to C.S., M.T., H.B., and C.I.R. exemplifies the broader failure of NYCPS to adopt policies to identify and evaluate students with School Avoidance and to ensure that these students receive the programming and services necessary to progress educationally. See, e.g., Am. Compl. ¶ 177.

Meanwhile, the defendants argue that, contrary to the plaintiffs' assertions, the administrative process can provide relief for students suffering from School Avoidance—and in fact has provided such relief in individual students' cases. The defendants stress that responding to a parent's dissatisfaction with how NYCPS responds to a student's School Avoidance requires

17

resolving various factual questions, including considering the different ways in which School Avoidance can be addressed and developing individualized solutions for that particular student.

The defendants have the better argument. The plaintiffs have alleged no broader law or policy that would pose a barrier to relief through administrative proceedings. More fundamentally, the plaintiffs' challenges raise educational issues that would benefit from percolation in the administrative process. At bottom, this case is about the alleged failure of NYCPS to provide a FAPE to the individual minor plaintiffs. As the Amended Complaint makes clear, C.S., M.T., H.B., and C.I.R. each have different disabilities and IEPs, and they struggle with School Avoidance in distinct ways; supporting each student's return to school will require NYCPS to develop strategies and provide services tailored to each individual student. See id. ¶¶ 97-107 (C.S.); id. ¶¶ 108-21 (M.T.); id. ¶¶ 122-38 (H.B.); id. ¶¶ 139-53 (C.I.R.).

Even the way in which the Amended Complaint describes the allegedly systemic failures of the defendants illustrates that the plaintiffs principally take issue with the defendants' ability to address individual students' School Avoidance. More particularly, the plaintiffs allege that the defendants have failed to meet their obligations under the IDEA through their:

> a. Failure to identify students with School
> Avoidance;
> b. Failure to evaluate students with School
> Avoidance;
> c. Failure to develop appropriate
> programming for students with School Avoidance
> . . . ; and
> d. Failure to ensure that each student with
> School Avoidance <u>receives an education that is
> reasonably calculated to ensure his or her
> educational progress</u>, including by failing to
> develop <u>individualized</u> special education
> programs to address the root causes of their
> School Avoidance.

<u>Id.</u> ¶ 177 (emphasis added). Identifying students with School
Avoidance, evaluating these students, and developing appropriate
programming for them ultimately boils down to "ensur[ing] that
each student with School Avoidance receives an education that is
reasonably calculated to ensure his or her educational
progress." <u>Id.</u> Whether a student's School Avoidance in an
individual case is tied to a disability, whether the substance
and implementation of an IEP is adequate to meet a student's
educational needs, whether a student is being denied a FAPE—
these are "precisely the kinds of factual issues that are best
left to the expertise of the involved agencies rather than the
courts." <u>Levine v. Greece Cent. Sch. Dist.</u>, No. 08-cv-6072, 2009
WL 261470, at *6 (W.D.N.Y. Feb. 4, 2009). Far from being futile,
administrative review of the plaintiffs' challenges is crucial
because it would promote the statutory goals of "developing
facts, making use of available expertise, and promoting

efficiency." J.S., 386 F.3d at 113. And, to the extent individual students are dissatisfied with the results of the administrative process, including an appeal to an SRO, the students would have access to the courts with a complete factual record.

Examples of School Avoidance cases pursued through the administrative process further support this conclusion. The defendants identify multiple administrative decisions involving a parent's challenge to a child's IEP due in part to NYCPS's alleged failure to address the child's School Avoidance. See, e.g., In re: Student with a Disability, 124 LRP 25144, at 3 (Sep. 30, 2021), Ex. A to Riddleberger Decl., ECF No. 33-1 (IHO decision finding that a student with a "history of school avoidance and task avoidance and of social issues with peers" had been denied a FAPE and that a "full-time therapeutic environment" was necessary for the student to make meaningful educational progress); In re: Student with a Disability, 124 LRP 42708, at 6 (Jan. 11, 2023), Ex. B to Riddleberger Decl., ECF No. 33-2 (IHO decision finding that a student with school avoidance had been denied a FAPE for three academic years because the defendants failed to provide the student "with a program designed to meet his unique needs" and to investigate the student's absences adequately).

Similarly, cases in this Circuit adjudicating appeals from administrative decisions illustrate the importance of the administrative scheme in bringing the expertise of the relevant agencies to bear on the issue of School Avoidance. See, e.g., B.Z. v. Hewlett Woodmere Union Free Sch. Dist., No. 23-cv-1759, 2025 WL 339140, at *10 (E.D.N.Y. Jan. 27, 2025) (agreeing with the IHO's decision that the student was denied a FAPE and disagreeing with the SRO's decision to the contrary because the SRO's conclusions were at odds with the "consensus among witnesses that [the student] consistently refused to enter the premises of the [school]"); M.N. ex rel. E.N. v. Katonah Lewisboro Sch. Dist., No. 19-cv-6793, 2020 WL 7496435, at *18-19 (S.D.N.Y. Dec. 21, 2020) (describing the IHO's and SRO's consideration of a social worker's testimony about services and behavioral strategies that have been used with students struggling with School Avoidance); see also L.O., 822 F.3d at 113 n.15 (describing an administrative action where a parent successfully challenged the adequacy of her child's IEP, including for "failure to address [the child's] school avoidance behaviors").

The plaintiffs rely heavily on their assertion of alleged "systemic" violations. Indeed, the Amended Complaint is replete with references to purported "systemic" failures. See, e.g., id. ¶¶ 9, 59, 63, 86, 167-69. But "systemic" is not a talismanic

word. Courts have excused exhaustion as futile in IDEA cases involving alleged systemic violations not simply because the purported violations were so labeled, but because it was clear from the nature of the claimed violations that the violations were ones that the "hearing officer had no power to correct." J.S., 386 F.3d at 113. In short, these cases show only that "in some cases asserting systemic violations, courts have agreed that exhaustion would be futile," and "do not establish that merely asserting a systemic violation or policy is sufficient to show futility where there is evidence to the contrary." L.T. v. N.Y.C. Dep't of Educ., No. 23-cv-9826, 2025 WL 896842, at *6 (S.D.N.Y. Mar. 24, 2025).

The cases excusing exhaustion as futile involved alleged systemic violations that are different from those alleged in this case. In some of those cases, the alleged violations were structural shortcomings in the administrative process that rendered it impossible for parents to receive an impartial hearing, in clear violation of the IDEA's procedural guarantees. See, e.g., Heldman, 962 F.2d at 158-59 (finding exhaustion futile because the plaintiff was challenging the way in which hearing officers were selected, which no individual hearing officer would have the authority to alter).

Other cases challenged a blanket policy or some other kind of complete failure of the school district, rather than the

adequacy of particular IEPs or educational arrangements. See,
e.g., J.S., 386 F.3d at 114-15 (finding exhaustion futile where
the complaint "d[id] not challenge the content of Individualized
Education Programs, but rather the School District's total
failure to prepare and implement Individualized Education
Programs"); J.L. ex rel. J.P. v. N.Y.C. Dep't of Educ., 324 F.
Supp. 3d 455, 464-65 (S.D.N.Y. 2018) (finding exhaustion futile
because the plaintiffs' claims pertained to generally applicable
City policies and procedures, which "created layers of
bureaucracy that made it difficult for parents of disabled
children to obtain services"); M.G. v. N.Y.C. Dep't of Educ., 15
F. Supp. 3d 296, 304-05 (S.D.N.Y. 2014) (finding exhaustion
futile because the plaintiffs were challenging the City's
widespread policies regarding the provision of services to
autistic children, including the City's "refus[al] to include
certain services on any IEP regardless of the student's needs").

   The common thread running through the cases in these
categories is that "the wrongdoing complained of is inherent in
the [educational] program" or policies that the defendants
adopted and "is not directed against any specific child." J.G.
by Mrs. G. v. Bd. of Educ. of Rochester City Sch. Dist., 830
F.2d 444, 446 (2d Cir. 1987). In these cases, "the plaintiffs'
claims were such that an administrative record would not have

been of substantial benefit to the district court." J.S., 386 F.3d at 114.

In this case, the alleged "systemic" violations do not fall into the categories discussed above. Rather, the plaintiffs principally allege that the defendants failed to provide a FAPE to individual students in specific ways, while asserting conclusorily that these specific failures were part and parcel of a generally applicable policy or practice. However, where—as in this case—IDEA plaintiffs are fundamentally seeking "individualized relief, based on specific needs and circumstances, that IHOs and SROs have the power to hear and remedy," plaintiffs should not be permitted to sidestep the exhaustion requirement simply because those individual complaints may also implicate some more generally applicable policy or be "attributable to district-wide violations of the IDEA." L.T., 2025 WL 896842, at *7; see also Montalvan v. Banks, 707 F. Supp. 3d 417, 433–34 (S.D.N.Y. 2023) ("[E]ven where a claim for individualized relief is based on a FAPE denial attributable to school- or district-wide violations of the IDEA, such claims benefit from the exercise of discretion and educational expertise by state and local agencies."). Were it otherwise, "the futility exception would swallow the exhaustion requirement." Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 489 (2d Cir. 2002), abrogated in part

24

on other grounds by <u>Luna Perez v. Sturgis Pub. Schs.</u>, 598 U.S.
142, 147–48 (2023). This is because an IDEA plaintiff could
plausibly frame almost any challenge to the adequacy of an IEP
or a school placement as one implicating a purportedly
"systemic" failure.

Ultimately, the Court must be "mindful that the judiciary
generally lacks the specialized knowledge and experience
necessary to resolve persistent and difficult questions of
educational policy." <u>Bryant v. N.Y. State Educ. Dep't</u>, 692 F.3d
202, 215 (2d Cir. 2012). Ensuring that each student struggling
with School Avoidance receives a FAPE requires considering that
individual student's specific needs and fine-tuning the
student's educational program accordingly—inquiries that
educational agencies are uniquely well-situated to undertake in
the first instance. Because the violations alleged in this case
are ones that a hearing officer would have the power to correct,
administrative exhaustion would not be futile.

**2.**

The plaintiffs also argue that exhaustion would be futile
because nearly 90,000 NYCPS students with disabilities are
chronically absent, and therefore requiring "thousands, if not
tens of thousands of parents" to "flood the administrative
system with individual complaints" regarding NYCPS's alleged

25

failure to address School Avoidance would be "absurd." Pltfs.
Opp. at 9 (citing Am. Compl. ¶ 156 & n.21).

It is true that, in some cases, courts have excused
exhaustion based on the nature and volume of the complaints. In
those cases, the defendants conceded or the plaintiffs in fact
demonstrated that the administrative process was incapable of
providing relief to the plaintiffs in a timely manner. See,
e.g., Jose P. v. Ambach, 669 F.2d 865, 868-69 (2d Cir. 1982)
(finding exhaustion futile in case involving allegations that
the defendants "fail[ed] to evaluate and place handicapped
children in appropriate programs in a timely fashion" where the
Commissioner of Education had conceded that "he would be unable
to expeditiously process the appeals of all the members of the
plaintiff class were they to pursue administrative
proceedings"); Z.Q. by G.J. v. N.Y.C. Dep't of Educ., No. 22-cv-
939, 2023 WL 1486387, at *2 (2d Cir. Feb. 3, 2023) (summary
order) (finding exhaustion futile where the plaintiffs alleged
that, at the start of the COVID-19 pandemic, the City had "blown
past the legal deadline for resolution" of due process
complaints for more than 70% of 10,000 open complaints, "forcing
families to wait months or even years before receiving the
special education services they need").

However, in this case, the plaintiffs' allegations
insufficiently plead that the "nature and volume" of their

complaints are "incapable of correction by the administrative hearing process." J.S., 386 F.3d at 114. As the plaintiffs concede, chronic absenteeism is distinct from School Avoidance. The Amended Complaint alleges only that nearly 90,000 students with disabilities are chronically absent; it does not allege the number of students with School Avoidance, and the subset of those students whose School Avoidance is attributable to their disabilities. Hence, the allegation that the administrative process would be unable to handle "thousands" of challenges, Am. Compl. ¶ 173, is "speculative" at best, and in any event cannot overcome the fact that "thousands of students administratively appeal their IEPs and challenge any denial of a FAPE through the administrative process every year," L.T., 2025 WL 896842, at *7.

The plaintiffs' generic contention that exhaustion should be excused because of the alleged "lengthy delays" in completing the administrative process—119 days, on average—fares no better. Pltfs. Opp. at 10; see also Am. Compl. ¶ 171. As the defendants correctly argue, the plaintiffs have failed to pursue their challenges in the administrative process at all, and therefore any claim that their challenges would be subject to "lengthy delays" warranting excusal of the exhaustion requirement is, again, speculative. "[F]utility is not measured by the fact that it takes time to hold hearings." J.T. v. de Blasio, 500 F. Supp. 3d 137, 194 (S.D.N.Y. 2020). That the parent plaintiffs have

failed to participate in the administrative process, even though some of the minor plaintiffs have allegedly struggled with School Avoidance and been denied a FAPE for multiple school years, further undercuts the plaintiffs' claim that the administrative process would take too long to provide relief.

For these reasons, pursuing administrative remedies would not be futile in this case. The plaintiffs are not excused from complying with the IDEA's exhaustion requirement. Therefore, the court lacks jurisdiction over the plaintiffs' IDEA claims, and those claims are **dismissed without prejudice.**

### B.

The plaintiffs' failure to exhaust the administrative process also requires dismissal of their claims brought pursuant to the ADA, Section 504, and § 1983. Under 20 U.S.C. § 1415(l), "[c]laims brought under the ADA and Rehabilitation Act are subject to the exhaustion requirements of the IDEA when they seek relief that would also be available under the IDEA." Doe v. Franklin Square Union Free Sch. Dist., 100 F.4th 86, 100 (2d Cir. 2024). The same is true of claims arising under § 1983 that

seek to ensure a FAPE. See J.S., 386 F.3d at 112.[5] In this case, the plaintiffs' complaints that the students were denied a FAPE are at the crux of their ADA, Section 504, and § 1983 claims, and the plaintiffs do not seek relief for these claims that would not also be available under the IDEA. Accordingly, the IDEA's exhaustion requirement applies to the plaintiffs' other federal claims as well. The plaintiffs' ADA, Section 504, and § 1983 claims are therefore **dismissed without prejudice.**[6]

## C.

Because the Court lacks subject-matter jurisdiction over the plaintiffs' federal claims, the court declines to exercise supplemental jurisdiction over the plaintiffs' state- and City-law claims. See 28 U.S.C. § 1367(c)(3). "[I]f a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well." Brzak v. United Nations, 597 F.3d

---

[5] Courts have permitted § 1983 claims in the IDEA context where the plaintiff's complaint is that some conduct or policy of the defendant deprived the plaintiff of "the opportunity to take advantage of the procedural safeguards offered by the statute." Quackenbush v. Johnson City Sch. Dist., 716 F.2d 141, 147–48 (2d Cir. 1983). Those circumstances are not alleged in this case, where it is undisputed that the plaintiffs did not attempt to avail themselves of the IDEA's due process hearing procedures at all.

[6] The defendants additionally argue that the plaintiffs' ADA and Section 504 claims should be dismissed for failure to allege that the defendants acted with "bad faith or gross misjudgment." Defs. Br. at 17, ECF No. 32. However, in a decision issued after the parties completed briefing on this motion, the Supreme Court held that nothing in the ADA and Rehabilitation Act requires plaintiffs in the educational services context to show "bad faith or gross misjudgment" to prevail on their claims. A.J.T. by & through A.T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279, 605 U.S. 335, 344–46 (2025). In any event, for the reasons explained above, the plaintiffs' ADA and Section 504 claims must be dismissed for failure to exhaust administrative remedies.

107, 113–14 (2d Cir. 2010). Therefore, the plaintiffs' claims under the New York State Constitution and the NYCHRL are **dismissed without prejudice.**

### CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the defendants' motion to dismiss is **granted.** The Clerk is respectfully requested to enter judgment dismissing this case without prejudice. The Clerk is also directed to close this case and to close all pending motions.

**SO ORDERED.**

Dated:    New York, New York
          September 4, 2025

```
                              John G. Koeltl
                         United States District Judge
```